# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FORT SMITH DIVISION

PEPPER SOURCE, LTD.

                Plaintiff,

     v.

CHEP, a Brambles Company; BRAMBLES NORTH AMERICA, INC.; BRAMBLES USA, INC.; CHEP SERVICES, LLC; CHEP CONTAINER AND POOLING SOLUTIONS, INC.; and BRAMBLES AMERICAS, INC.

                Defendants.

Case No.:  2:20-cv-2079

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION, FAILURE TO STATE A CAUSE OF ACTION, TO TRANSFER TO THE EASTERN DISTRICT OF LOUISIANA, OR IN THE ALTERNATIVE, TO STAY

Defendants, CHEP, a Brambles Company, Brambles North America, Inc. ("Brambles N.A."), Brambles USA, Inc. ("Brambles USA"), CHEP Services, LLC ("CHEP Services"), CHEP Container and Pooling Solutions, Inc. ("CCPS"), and Brambles Americas, Inc. (collectively, "Defendants"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), hereby respectfully move this Court for an Order (1) dismissing Plaintiff's Complaint (Doc. No. 3) for lack of personal jurisdiction, failure to state a claim upon which relief may be granted, and declining to hear Plaintiff's declaratory judgment action and (2) transferring this action to the District Court for the Eastern District of Louisiana. In the alternative, Defendants ask the Court to stay this action pending resolution of the action pending in the United States District Court for the Eastern District of Louisiana.

## I.      INTRODUCTION

This action was initiated by Plaintiff in a "race to the courthouse" fashion to strip CCPS,

the natural plaintiff in this dispute, of its right to choose the forum in which to litigate its claims. Plaintiff haphazardly drafted an eleven paragraph declaratory judgment complaint that wholly fails to state a claim and is a "kitchen-sink" or "shotgun" pleading that lumps all Defendants together, leaving it up to the Court and Defendants to guess what exactly it is that Plaintiff alleges. What is more, despite the underlying contract from which the dispute arises being solely between Plaintiff and CCPS, the Amended Complaint names as additional defendants two fictitious defendants—CHEP, a Brambles Company and Brambles Americas, Inc.—and three other entities upon which Arkansas courts lack personal jurisdiction and which are not parties to the underlying contract.

Currently pending before the United States District Court for the Eastern District of Louisiana is a parallel lawsuit brought by CCPS against Plaintiff for monetary damages and declaratory relief relating to the same underlying dispute at issue here: CCPS' assessment of *per diem* fees and lost container charges against Plaintiff (the "Louisiana Case"). *CHEP Container & Pooling Solutions, Inc. v. Pepper Source, Ltd.*, Case No. 2:20-cv-01225-JTM-KWR, Doc. 1 (E.D. La.) (Complaint). The Louisiana Case is between substantially similar parties—excluding the improperly joined and fictitious Defendants—and is based on the same underlying facts, but involves the full scope of claims between the Parties and will provide global relief.

This Court should dismiss the Amended Complaint for several reasons. First, the Court lacks personal jurisdiction over Defendants CHEP, a Brambles Company (which does not exist), Brambles Americas, Inc. (another non-existent entity), Brambles N.A., Brambles USA, and CHEP Services, LLC. Second, the Amended Complaint, a mere eleven paragraph complaint full of conclusory allegations, fails to state a claim because it lacks sufficient factual allegations showing that Plaintiff is entitled to the requested relief. Third, the Amended Complaint

improperly joins Defendants CHEP, a Brambles Company (a non-existent entity), Brambles Americas, Inc. (a non-existent entity), Brambles N.A., Brambles USA, and CHEP Services, LLC despite these entities not being signatories or parties to the underlying contract upon which Plaintiff seeks declaratory relief. The Amended Complaint should be dismissed as against these non-party Defendants. Fourth, the Court should exercise its discretion to decline to hear a pure declaratory judgment action, because this case was brought with the improper purpose of "procedural fencing" and to strip CCPS, the natural plaintiff, of its right to select the forum in which to prosecute its claims. By dismissing the instant action, the Court would allow the Parties' dispute to be more fully resolved in the Louisiana Case instead of having the Parties litigate the same issue in two different forums—one of which was simply an improper attempt by Plaintiff at forum shopping.

As an alternative, Defendants ask the Court to transfer this case to the Eastern District of Louisiana, or to stay this action pending resolution of the Louisiana Case. Transferring or staying this action in favor of allowing the Louisiana Case to proceed would preserve the Parties' and the Court's resources by allowing the dispute between the Parties to be fully resolved in the natural plaintiff's—CCPS—chosen forum.

## II.      **BACKGROUND**

On March 12, 2020, while Plaintiff and CCPS were still negotiating, Plaintiff filed this action in the Circuit Court for Crawford County, Arkansas. Four days later, before serving the original complaint, Plaintiff filed the Amended Complaint alleging a single count for declaratory judgment and served the same on Defendants on or about April 14 and 16, 2020 by certified

mail.[1]  On or about May 8, 2020, Defendants filed a Notice of Removal and timely removed the action to this Court pursuant to diversity jurisdiction.  (Doc. No. 1).

This action arises out of a dispute between Plaintiff and CCPS relating to their contractual arrangement in which, for over a decade, CCPS rented equipment to Plaintiff, including containers, crates, scanners, and other related equipment.  CCPS (through its predecessor) and Plaintiff entered into a Pay Per Use Trip Rental Agreement in 2008 for CCPS to rent to Plaintiff various pieces of equipment (the "2008 Contract").  The 2008 Contract is attached hereto as **Exhibit "A."**  The 2008 Contract is circular in nature.  The customer pays CCPS to use its equipment to assist in the loading, unloading, and delivery of goods.  After the expiration of the rental period, those units of equipment must be returned to CCPS to allow CCPS to clean the units and rent them to another customer.  If a customer exceeds the period of time it is contractually permitted to use equipment, the rental converts to a *per diem* daily fee (usually $0.85 per day) per unit of equipment that is overdue to be returned.  If a unit of equipment is returned damaged, excessively soiled, or is lost, the customer is responsible for the repair and replacement cost.

Beginning in 2008 through early 2020, CCPS and Plaintiff maintained a continuous business relationship.  Plaintiff and CCPS would in some instances formally extend their contractual agreement by executing one or two page "Rate Schedules" memorializing new rental rates and conditions.  Such new Rate Schedules were executed by Plaintiff and CCPS in at least 2009 and 2017.  In both addenda, CCPS retained the right to charge *per diem* fees for equipment kept past its rental period and allocated the risk of loss to Plaintiff by making Plaintiff responsible for any damages beyond ordinary wear and tear and for any lost equipment.  The

---

[1] Plaintiff did not properly serve the two non-existent entities CHEP, a Brambles Company and Brambles Americas, Inc. because it did not even have summonses issued for these two entities in the Circuit Court of Crawford County, Arkansas, likely because these entities do not exist.

2009 and 2017 Rate Schedules are attached hereto as **Composite Exhibit "B."**  As illustrated by the various executed documents, the sole parties to the contract were Plaintiff and CCPS.

In January/early February 2020, upon the conclusion of an audit by CCPS of Plaintiff's facilities, with Plaintiff's consent and participation, CCPS discovered that Plaintiff owed *per diem* fees to CCPS in an amount (at that time) totaling over $380,000.00 for equipment kept past its rental period and $69,300.00, exclusive of interest and other fees, for costs to replace lost containers.  Declaration of Amelia Otlowski, dated June 14, 2020, at ¶¶ 7-8, attached hereto as **Exhibit "C."**[2]  As a result, CCPS and Plaintiff began negotiations to attempt to reach a resolution regarding these *per diem* fees and lost container charges.  *Id.* at ¶¶ 9-11.  CCPS indicated to Plaintiff its intent to seek payment for these fees should the parties not be able to reach a resolution.  *Id.* at ¶ 12.  On March 12, 2020, while negotiations were still on-going, Plaintiff terminated CCPS' services and filed the instant action.  *Id.* at ¶¶ 13-14.  Plaintiff, however, withheld service of the Amended Complaint and CCPS and Plaintiff continued negotiations in an attempt to reach a resolution.  *Id.* at ¶ 15.  Plaintiff did not serve the lawsuit upon CCPS until approximately April 16, 2020.  *Id.* at ¶ 16.

On April 17, 2020, CCPS filed the Louisiana Case seeking monetary damages for the *per diem* fees and lost container charges owed by Plaintiff, as well as a declaration of rights and responsibilities.  *See CHEP Container & Pooling Solutions, Inc. v. Pepper Source, Ltd.*, Case No. 2:20-cv-01225-JTM-KWR, Doc. 1 (E.D. La.) (Complaint).  Plaintiff's declaratory judgment count in its Amended Complaint attempts to address these same issues, whether Plaintiff owes *per diem* fees and lost container charges to CCPS.  Plaintiff's action, however, would not provide global relief in the same manner as the Louisiana Case.

---

[2] The Declarations attached to the Motion are being relied upon only for Defendants' Rule 12(b)(2) challenge, their request to transfer/stay this action, and against the application of the "first to file" doctrine.  The Declarations are not being relied upon for Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

III.     **LEGAL STANDARD**

    A.     **Personal Jurisdiction.**

"To allege personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Merryman v. JPMorgan Chase Bank, N.A.*, Case No. 5:15-CV-5100, 2015 WL 7308666, at \*2 (W.D. Ark. Nov. 19, 2015) (quoting *Well Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010)).  The plaintiff bears the burden of "proving sufficient facts to support a prima facie showing of personal jurisdiction." *Id.*  "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

Arkansas' long-arm statute authorizes the exercise of personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." *Id.* (citing Ark. Code Ann. § 16-4-101).  Therefore, the only question the Court must resolve is whether the exercise of personal jurisdiction over a defendant is constitutionally permissible.  *Id.* "Due process require 'minimum contacts' between the non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice,' and 'such that the defendant should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).  There are two types of personal jurisdiction that a court may exercise: general or specific. *Id.*

    B.     **Failure to State a Claim.**

In order to meet the pleading standard of Federal Rule of Civil Procedure 8, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, to successfully state a claim upon which relief can be granted, the plaintiff must "assert facts that affirmatively and plausibly suggest [the plaintiff] has the right it claims…rather than facts that are merely consistent with such a right." *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 895 (8th Cir. 2010). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594.

While factual allegations must be taken as true by a court when considering a motion to dismiss, "legal conclusions or 'formulaic recitation of the elements of a cause of action'" are not entitled to such presumption and must be set aside. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009)). Further, some factual allegations "may be so indeterminate that they require 'further factual enhancement' in order to state a claim." *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, "naked assertions" that are devoid of "further factual enhancement" are insufficient to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678.

> **C.    Court's Authority to Transfer or Stay the Action.**

As discussed in further detail in Section IV.E. *infra*, this Court has the inherent power to transfer or stay this action as part of its ability to control its docket. It is an oft quoted phrase that, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163 (1936)); *see also Kreditverein der Bank Austria Creditanstalt fur Niederösterreich und Bergenland v. Nejezchleba,* 477 F.3d 942, 945-46 (8th Cir. 2007). The United States Court of Appeals for the Eighth Circuit has often recognized a

district court's inherent power to manage and control its docket.  *See, e.g., Cottrell*, 737 F.3d at 1248 (collecting cases); *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 952–54 (8th Cir. 2001).

This case involves a request for this Court to stay a pending federal case in light of parallel litigation[3] *in another federal court*.  The standard articulated by the *Landis* Court and its progeny applies,[4] rather than the stricter standard which applies if this Court were asked to stay a case when the parallel case was pending in the *courts of another state*.[5]  "Whether a federal court should defer to another pending federal court action involves different considerations from those involved when the court decides whether to abstain in favor of pending state litigation." *Am. Home Assur. Co. v. Roxco, Ltd.*, 81 F. Supp. 2d 674, 678–79 (S.D. Miss. 1999).  Whereas, "the pendency of a state court action is ordinarily 'no bar to proceedings concerning the same subject matter in the Federal court having jurisdiction,'" "[a]s between federal district courts, 'the general principle is to avoid duplicative litigation.'"  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1190 (5th Cir. 1988) (quoting *Colorado River*, 424 U.S. at 817, 818); *see also Parfait v. Nabors Offshore Drilling, Inc.*, 46 F.Supp.2d 677, 679 (S.D. Tex. 1999) (citing *Evanston*). The circumstances permitting the dismissal of a federal suit due to the presence of a concurrent federal proceeding for reasons of wise judicial administration are considerably broader than the circumstances appropriate for abstention in parallel state court litigation.  *Evanston*, 844 F.2d at

---

[3] Cases are considered parallel when "substantially similar parties are litigating substantially similar issues in both state and federal court." When determining whether there is substantial similarity, the relevant question is whether there is a "substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." While the standard is one of 'substantial similarity,' the proceedings need not be identical. *In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*, 4:12-CV-4041, 2012 WL 5935340, at *2 (W.D. Ark. Nov. 27, 2012), vacated and remanded on other grounds by *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013).

[4] *See, e.g., Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 482 (N.D. Tex. 2016), noting that the Supreme Court "decided the *Landis*, 299 U.S. 248, 57 S.Ct. 163 case in the context of a district court's decision to grant a stay in favor of related federal litigation." *See also Landis*, 299 U.S. at 249–53.

[5] This more stringent test, which does not apply here, is widely known as *Colorado River* abstention, as first articulated in the Supreme Court case of *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 806 (1976).

1190; *Am. Home Assur. Co. v. Roxco, Lt*d., 81 F. Supp. 2d 674, 678–79 (S.D. Miss. 1999).  The

general principle here is "to avoid duplicative litigation," *see Colorado River Water*

*Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236 (1976).

## IV.     ARGUMENT

###     A.     The Court Lacks Personal Jurisdiction over Defendants Brambles USA, CHEP Services, Brambles N.A., CHEP, a Brambles Company, and Brambles Americas, Inc.

####         1.     The Court Lacks General Personal Jurisdiction.

"The Due Process Clause permits the exercise of 'general jurisdiction' to hear 'any and

all claims against' a defendant if its 'affiliations with the State are so continuous and systematic

as to render [it] essentially at home in the forum State.'"  *Creative Calling Solutions, Inc. v. LF*

*Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117,

126 (2014)).  "For a corporation, the paradigm forum for the exercise of general jurisdiction is

the place of incorporation and the principal place of business."  *Valley View Agri, LLC v.*

*Producers Cooperative Oil Mill*, No. 3:14CV00307 JLH, 2015 WL 6459981, at *4 (E.D. Ark.

Oct. 26, 2015) (citing *Daimler AG*, 571 U.S. at 137).  Although a corporation's state of

incorporation or where it has its principal place of business are not the exclusive forums with

general personal jurisdiction, U.S. Supreme Court precedent makes "clear that even a company's

engagement in substantial, continuous, and systematic course of business is alone insufficient to

render it at home in a forum."  *Id.* (quoting *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750

F.3d 221, 226 (2nd Cir. 2014).  "It is, therefore, incredibly difficult to establish general

jurisdiction in a forum other than the place of incorporation or principal place of business."  *Id.*

(quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

Plaintiff's Amended Complaint wholly fails to allege any facts—because there are none—that would support general personal jurisdiction over Defendants Brambles N.A., Brambles USA, and CHEP Services. Brambles N.A., Brambles USA, and CHEP Services are not incorporated in Arkansas. Declaration of Amelia Otlowski, dated June 14, 2020, at ¶¶ 3-5, attached hereto as **Exhibit "D."** Brambles N.A., Brambles USA, and CHEP Services do not have their principal place of business in Arkansas. *Id.* While Brambles, N.A., Brambles USA, and CHEP Services are authorized to do business in Arkansas, such business is not of a continuous and systematic character that would render them essentially at home in Arkansas. *Id.* at ¶ 9. Brambles N.A., Brambles USA, and CHEP Services do not have offices or employees in Arkansas. *Id.* at ¶¶ 6-8. Brambles N.A., Brambles USA, and CHEP Services do not own real estate in Arkansas. *Id.* Brambles Americas, Inc. and CHEP, a Brambles Company are not real entities. *Id.* at ¶ 10.

Nor does Plaintiff allege facts showing any continuous or systematic business by these entities that would render them at home in Arkansas. This Court lacks general personal jurisdiction over Defendants Brambles N.A., Brambles USA, CHEP Services, Brambles Americas, Inc. and CHEP, a Brambles Company.

2.   The Court Lacks Specific Personal Jurisdiction.

Specific personal jurisdiction is proper only where a defendant "has certain contacts with the forum State and the cause of action arises out of those contacts." *Creative Calling Solutions, Inc.*, 799 F.3d at 979-80 (citing *Daimler AG*, 571 U.S. at 126-27). "Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "This connection must be based on 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws.'" *Id.* at 980 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). "The defendant's contacts with the forum must thus be more than 'random, fortuitous, or attenuated,' and must permit the defendant to 'reasonably anticipate being haled into court there.'" *Id.* "To assess whether a defendant has purposefully availed itself of the forum and established minimum contacts, we examine the nature, quality, and quantity of the defendant's contacts with the forum State and the connection between the cause of action and those contacts." *Id.*

Despite Plaintiff's hodgepodge allegations lumping all Defendants together—a deficiency of the Amended Complaint addressed in section IV.B.1 *infra*, Brambles N.A., Brambles USA, CHEP Services, Brambles Americas, Inc., and CHEP, a Brambles Company have never had any contractual or other business relationship with Plaintiff or otherwise engaged in minimum contacts with the State of Arkansas from which Plaintiff's claims arise.

Plaintiff's single declaratory judgment claim purports to arise from the contractual relationship between Plaintiff and CCPS. Indeed, the Amended Complaint seeks declaratory relief to avoid fees and charges assessed by CCPS against Plaintiff pursuant to their contractual relationship. As evidenced by the contract and the invoices related thereto and attached hereto as **Composite Exhibit "E"**, the only parties to the contract giving rise to the dispute at issue are Plaintiff and CCPS. *See* Composite Exs. B & E. Brambles N.A., Brambles USA, CHEP Services, Brambles Americas, Inc., and CHEP, a Brambles Company are not parties to the contract, and never have been. *See* Composite Ex. B; Ex. D at ¶ 11.

Plaintiff cannot establish specific personal jurisdiction over Brambles N.A., Brambles USA, CHEP Services, Brambles Americas, Inc., and CHEP, a Brambles Company because

Plaintiff has failed to show that these defendants have minimum contacts with the State of Arkansas from which Plaintiff's declaratory judgment claim arises.

**B.      The Complaint Should be Dismissed for Failure to State a Claim.**

1.    The Amended Complaint Fails to Satisfy the Pleading Requirements of Federal Rule of Civil Procedure 8.

The Amended Complaint is a haphazard collection of conclusory allegations that fail to state facts showing Plaintiff is entitled to relief.  It is black letter law that "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Holtsclaw v. Sanders*, Case No. 2:16-cv-02020, 2016 WL 3951213, at *1 (W.D. Ark. July 20, 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "However, pleadings that contain mere 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'"  *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009)).  "Additionally, 'some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim.'"  *Ratliff v. Hartgraves*, Civil No. 11-5182, 2011 WL 5837253, at *1 (W.D. Ark. Oct. 20, 2011) (*quoting Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)), report and recommendation adopted 2011 WL 5837248.

Similarly, "[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Boggs v. Am. Optical Co.*, No. 4:14-CV-1434-CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) (*quoting Tatone v. SunTrust Mortgage, Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012)).  "A 'shotgun pleading' or 'kitchen sink pleading' in which a plaintiff asserts every possible cause of action against a host of defendants for actions over a prolonged period…but without facts specific enough that those defendants can respond to the allegations does not comport with even the most generous

reading of Rule 8(a)." *Id.* (collecting cases). "This practice is akin to 'coughing up an unsightly hairball of factual and legal allegations, stepping to the side, and inviting the defendants and the Court to pick through the mess and determine if plaintiff may have pleaded a viable claim or two.'" *Munt v. Schnell*, Case No. 19-cv-0056, 2020 WL 2129722, at *5 (D. Minn. Mar. 12, 2020) (*quoting Gurman v. Metro Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011)).

Here, the Amended Complaint is devoid of factual allegations showing that Plaintiff is entitled to declaratory relief. Plaintiff purports to seek a declaration that it is not liable for *per diem* fees and other charges assessed against it under the guise of "course of dealing," that "any contractual provision pertaining to per diem charges had expired," and "laches and/or contributory fault." Doc. No. 3 at ¶ 9. Yet nowhere in the mere eleven paragraphs of the Amended Complaint does Plaintiff make any factual allegations with respect to what "course of dealing" allegedly waived the fees and charges at issue or constitutes laches or "contributory fault." Similarly, Plaintiff does not even purport to allege what terms of the contract were supposedly modified by course of dealing. The eleven-paragraph Amended Complaint is nothing more than a string of legal conclusions without factual allegations that would support Plaintiff's course of dealing and other legal theories under which it seeks to avoid the *per diem* fees and lost container charges.

The few factual allegations that exist in the Amended Complaint fail to satisfy the pleading requirements of Rule 8. The Amended Complaint names three defendants with "CHEP" in their name—one of which is actually a non-existent entity, but the allegations merely refer to "CHEP" in all instances without distinguishing among the various similarly named defendants. Indeed, Plaintiff alleges that it "entered into contractual relationships with two

separate entities known as CAPS and CHEP for the use of various shipping containers," Doc. No. 3 at ¶ 3, leaving the Court and Defendants to guess which out of the three defendants with "CHEP" in their names are the subject of Plaintiff's allegation.  Similarly, there are three named defendants with "Brambles" in their name—one of which, again, is a non-existent entity, and Plaintiff fails to make any distinction among the various "Brambles" defendants.  *See id.* at ¶¶ 6-8 (alleging that "CAPS and CHEP" were acquired by "defendant, Bramble which began doing business as 'CHEP, a Brambles Company.'").  Courts in the Eighth Circuit routinely dismiss complaints that lump all defendants together and fail to sufficiently allege who did what because such a pleading fails to comply with Rule 8 of the Federal Rules of Civil Procedure.  *See, e.g.*, *Boggs*, 2015 WL 300509 at *2; *Gurman*, 842 F. Supp. 2d at 1153 ("It is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.").

The Court should dismiss the Amended Complaint for failure to state a claim because it is devoid of factual allegations showing that Plaintiff is entitled to the declaratory relief requested.  The Amended Complaint fails to meet the pleading standards of Rule 8 by lumping all Defendants together in its allegations and failing to allege which Defendants did what to provide fair notice of the conduct alleged against each Defendant.  Such a haphazard pleading is particularly troublesome in a claim seeking to declare the rights of parties to a contract.

            2.      <u>The Complaint Fails to State a Claim Against Defendants CHEP, a Brambles Company, Brambles North America, Inc., Brambles USA, Inc., CHEP Services, LLC, and Brambles Americas, Inc.</u>

The Amended Complaint should be dismissed as to Defendants CHEP, a Brambles Company, Brambles North America, Inc., Brambles USA, Inc., CHEP Services, LLC, and

Brambles Americas, Inc. because they are not parties to the underlying contract upon which Plaintiff premises its declaratory judgment claim.  The underlying contractual agreement was between Plaintiff and CCPS (and CCPS' predecessor, CAPS).  CHEP, a Brambles Company (a non-existent entity), Brambles Americas, Inc. (a non-existent entity), CHEP Services, LLC, Brambles North America, Inc. and Brambles USA, Inc. have never been signatories or parties to the underlying contract.

Documents necessarily embraced by the complaint are not matters outside the pleading and may be considered in deciding a Rule 12 motion to dismiss.  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  "In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'"  *Id.* (quoting *Ashanti v. City of Golden Valley*, 666 F. 3d 1148, 1151 (8th Cir. 2012)).  Where a contract embraced by a complaint contradicts the allegations in the complaint, dismissal for failure to state a claim is appropriate. *Id.* at 528 (affirming dismissal of complaint where contract underlying the dispute, yet not attached to the complaint, contradicted the allegations in the complaint); *Advantage Information Servs., LLC v. Bus. Information Solutions Grp.*, Civ. No. 06-3059, 2006 WL 3690811, at *1 (W.D. Ark. Dec. 13, 2006) ("[W]here the language of the attached contract contradicts the allegations of the complaint, the contractual language governs for the purposes of dismissal."). Plaintiff failed to attach any of the underlying written contract(s) and invoices to the Amended Complaint, but these documents are still fully embraced by the Amended Complaint which is premised entirely on the underlying contractual arrangement between Plaintiff and CCPS. Accordingly, they may be properly considered for purposes of this Rule 12 motion to dismiss.

The first contract in 2008 was solely between Plaintiff and CAPS (CCPS' predecessor) (the "2008 Contract").  *See* Ex. A.  In November 2009, CCPS and Plaintiff entered into a revised Rate Schedule—and again, no other parties are signatory to the contract.  *See* Composite Ex. B. Subsequently, in 2017, Plaintiff and CCPS entered into a third amended Rate Schedule (the "2017 Contract").  The only signatories to the 2017 Contract are Plaintiff and CCPS.  *Id.*  To be sure, the *per diem* charges were assessed by CCPS to Plaintiff and the invoices do not reflect such charges being assessed by any of the other named defendants.  *See* Composite Ex. E.  The contracts and documents embraced by the Amended Complaint refute any allegations that CHEP, a Brambles Company, Brambles Americas, Inc., Brambles North America, Inc., Brambles USA, Inc., and CHEP Services, LLC are parties or signatories to the underlying contract upon which Plaintiff premises its declaratory judgment action.  Accordingly, as non-parties to the underlying contract, the Amended Complaint should be dismissed as to Defendants CHEP, a Brambles Company, Brambles Americas, Inc., Brambles North America, Inc., Brambles USA, Inc., and CHEP Services, LLC.

> **C.**    **This Action Should be Dismissed in Favor of Allowing the Dispute to be Resolved in the Louisiana Case.**

"In exercising their discretion whether to entertain declaratory actions, courts have on occasion stated that declaratory actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit."  *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995).  Indeed, "[a] suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed."  *Id.* (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993)).  Thus, the Eighth Circuit has held that "where a declaratory plaintiff raises chiefly an affirmative defense, and it appears

that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue." *Id.* at 559. Further, under these circumstances, a court will not apply the "first-filed" rule. Where "the first-filed suit was filed after the other party gave notice of its intention to sue" and "the first-filed suit is for declaratory judgment, rather than for damages or equitable relief, therefore suggesting a 'race to the courthouse' in an attempt to preempt the natural plaintiff from his or her choice of forum," courts in the Eighth Circuit refuse to apply the first-filed rule and dismiss declaratory judgment actions filed merely to deprive the natural plaintiff' of its right to select the forum of its dispute. *Schwendiman Partners, LLC v. Hurt*, 71 F. Supp. 2d 983, 987-88 (D. Neb. 1999) (quoting *Northwest Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993)).

The filing of this action was nothing more than an attempt by Plaintiff to strip CCPS, the natural plaintiff, of its right to bring suit in the forum of its choice to collect the *per diem* and lost container charges Plaintiff seeks to avoid. All the "red flags" identified by the Eighth Circuit as factors supporting dismissal of a declaratory judgment action are present here. Plaintiff initiated this action in Arkansas while it was in negotiations with CCPS to attempt to reach a resolution as to the *per diem* fees and lost container charges that CCPS assessed against it. Ex. C at ¶¶ 14-16. After being put on notice that CCPS intended to assert its rights to assess the *per diem* fees and lost container charges and at a point in which CCPS was being led to believe a resolution was plausible, Plaintiff simultaneously terminated CCPS' services and filed the instant action in Arkansas state court by way of a conclusory, eleven paragraph Complaint for declaratory judgment. *Id.* Plaintiff's declaratory judgment was improperly initiated solely for forum-shopping purposes. Under these circumstances, courts in the Eighth Circuit dismiss preemptive declaratory judgment actions in favor of the litigation initiated by the natural plaintiff in its

17

chosen forum.  *See BASF Corp.*, 50 F.3d at 558 (vacating judgment granting declaratory relief where declaratory action was initiated to attempt to strip the right of the natural plaintiff to choose the forum); *Schwendiman Partners, LLC*, 71 F. Supp. at 989 (dismissing first-filed declaratory judgment action filed for purposes of forum-shopping); *Solna Web Inc. v. Printed Media Servs., Inc.*, No. 90-0433-CV-W-6, 1990 WL 357918, at *3 (W.D. Mo. Aug. 31, 1990) (exercise of jurisdiction over declaratory judgment actions is discretionary and should be dismissed when filed for "procedural fencing" purposes or in an attempt to strip the natural plaintiff of its choice of forum); *Koch Engineering Co., Inc. v. Monsanto Co.*, 621 F. Supp. 1204 (E.D. Mo. 1985) (same).

Dismissal is further supported by the fact that the Louisiana Case involves the same dispute raised by Plaintiff's declaratory judgment action, CCPS' entitlement to asses *per diem* fees and lost container charges, but would more fully resolve all the issues between the parties. *See CHEP Container & Pooling Solutions, Inc. v. Pepper Source, Ltd.*, Case No. 2:20-cv-01225-JTM-KWR, Doc. 1 (E.D. La.) (Complaint).  This Court should exercise its discretion to decline to hear pure declaratory judgment actions in light of the Louisiana Case.

### D.    The Fictitious Defendants Should be Dismissed.

In federal court, it is "impermissible to name fictitious parties as defendants."  *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019).  Accordingly, this Court should dismiss the Amended Complaint as to Brambles Americas, Inc. and CHEP, a Brambles Company as they are not real entities and are merely fictitious defendants improperly named in this action.

**E.    The Action Should be Transferred to the United States District Court for the Eastern District of Louisiana, or in the Alternative Stayed Pending Resolution of the Louisiana Case.**

    1.    <u>As an alternative to dismissal, a transfer of this action to the Eastern District of Louisiana is appropriate.</u>

While dismissal of Plaintiff's declaratory judgment claim is proper as it was filed solely for procedural fencing and forum shopping purposes, transfer of this action is a proper alternative remedy.  Plaintiff filed the instant action in an attempt to wrestle from CCPS its right to pursue its claims against Plaintiff in the forum of its choice.  Under such circumstances, while most courts in the Eighth Circuit have dismissed the declaratory judgment action, at least two courts have exercised their discretion in favor of transferring the action to the forum wherein the natural plaintiff is pursuing its claims.

In *Beard v. Diamond*, a case analogous to the present action, the district court transferred the declaratory judgment action pending before it to the Eastern District of Louisiana where the natural plaintiff was pursuing its claims.  *Beard,* No. 4:09cv00760BSM, 2010 WL 1644686, at *2-3 (E.D. Ark. Apr. 20, 2010).  Like the present action, the plaintiff in *Beard* initiated a declaratory judgment action in Arkansas state court seeking a declaratory relief against the defendant's claims while the parties were in settlement negotiations.  *Id.* at *1-2.  The defendant removed the case to the Eastern District of Arkansas and moved to dismiss, stay, or transfer the action to the Eastern District of Louisiana where the defendant had filed a complaint asserting its claims.  *Id.*  Applying Eighth Circuit case law, the court found that the first-filed rule did not apply because all red flags identified by the Eight Circuit were present indicating that plaintiff had filed its declaratory judgment claim in bad faith for forum shopping purposes.  *Id.* at *2.  As a result, the court entered an order transferring the action to the Eastern District of Louisiana where the defendant, the natural plaintiff, had filed suit to pursue its claims.  *Id.* at *3. The *Beard*

case is on all fours with the facts of this case, and demonstrates why transfer is warranted here.

Next, *Eveready Battery Co., Inc. v. Zinc Prods. Co., Div. of Alltrista Corp.* is also analogous and instructive. 21 F. Supp. 2d 1060 (E.D. Mo. 1998). In *Eveready Battery Co., Inc.*, the court ordered that the plaintiff's first-filed declaratory judgment action be transferred to the defendant's second-filed action in the Eastern District of Tennessee. *Id.* at 1062. The plaintiff, while in the middle of settlement negotiations, filed a declaratory judgment action without notifying the defendant of its change in position and did not serve the defendant with process until after the defendant rejected the plaintiff's settlement offer. *Id.* at 1061. The defendant then filed its own action in Tennessee seeking damages for the plaintiff's alleged breach of the parties' contract. *Id.* The court found that the plaintiff's actions in filing suit while the parties were in the middle of settlement negotiations and without notifying the defendant of its change in position indicated that the plaintiff's declaratory judgment action was merely filed to "rush to the court house" to gain the advantages of filing first. *Id.* at 1062 ("Evidence of insufficient notice of a change in the first-filing party's position on the dispute prior to filing of the first action is indicative of a rush to the court house and thus, compelling circumstances warranting non-application of the 'first filed' rule."). The court also found persuasive the fact that there was no indication that the declaratory judgment action was filed for reasons other than obtaining a favorable forum, and there was "no evidence that Eveready needed an immediate resolution of the matter such that litigation was necessary." *Id.* As a result, the court found that compelling circumstances existed not to apply the first-filed rule and to transfer the case to the Eastern District of Tennessee where the defendant, the natural plaintiff, had initiated suit to pursue its contract claims. *Id.* ("Eveready's failure to give Zinc notice of its position regarding liability and settlement alone would be enough to find compelling circumstances. The lack of any *compelling*

*reason* for Eveready to precede Zinc to filing other than to obtain a more favorable forum, however, is also persuasive." (emphasis added)).

This action presents the same compelling circumstances as in *Beard* and *Eveready Battery Co., Inc.* that justify the transfer (if not outright dismissal) of Plaintiff's declaratory judgment claim. Plaintiff filed this action while engaged with CCPS in negotiations and without notifying CCPS that its position had changed and it intended to pursue litigation. *See* Ex. C at ¶¶ 13-14. Only after filing the lawsuit did Plaintiff inform CCPS of the filing of the declaratory judgment action but still withheld service of process and continued to engage CCPS in resolution discussions. *Id.* at ¶ 15-16. Plaintiff therefore indicated that it had no immediate need to pursue litigation except for attempting to gain leverage against CCPS and strip CCPS of its right to pursue its claims in the forum of its choice. The fact that the initiation of this action was merely a race to the courthouse by Plaintiff is further supported by the Complaint, which is a barebones eleven paragraph pleading that does not even attempt to parse out the real parties in interest or the factual bases for the declaratory relief.

"As a matter of public policy, potential plaintiffs should be encouraged to settle their claims out of court without fear that they will lose the opportunity to pick their forum should negotiations fail." *Eveready Battery Co., Inc.*, 21 F. Supp. 2d at 1062. "The Court should encourage good faith settlement negotiations rather than rushing to the courthouse, and 'application of the first-filed rule should not penalize parties for their efforts to settle matters out of court.'" *Id.* Plaintiff's bad faith in initiating this action solely to gain an advantage of filing should not be rewarded. CCPS should not be penalized for pursuing pre-suit settlement negotiations by allowing Plaintiff to rush to the courthouse to strip CCPS of its traditional right, as the natural plaintiff, to pick the forum in which to pursue its claims. As an alternative to

dismissal, Defendants ask this Court to transfer this action to the Eastern District of Louisiana so that it may be consolidated with the Louisiana Case and avoid the inefficiencies of duplicative litigation in separate forums.[6]

2.      <u>As an alternative to dismissal or transfer, a stay of this Action is warranted.</u>

Alternatively, should this Court decline to dismiss or transfer this action, in the alternative, Defendants ask for a stay.  While "[g]enerally, a federal district court must exercise its jurisdiction over a claim unless there are exceptional circumstances for not doing so," *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005), this Court has broad discretion to grant a stay where an action seeks merely a declaratory judgment.  *Philadelphia Indem. Ins. Co. v. Bella Vista Vill. Prop. Owners Ass'n*, 5:19-CV-05117, 2019 WL 5847842, at *2 (W.D. Ark. Nov. 7, 2019).

Defendants' request for a stay should be considered under *Landis* and its progeny, which provides "broad" discretion to the Court to grant a stay, especially when there is not a "fair possibility" that the stay "will work damage to someone else."  *SuperMedia Inc. v. Bell*, 3:12-CV-2034-GFISH, 2012 WL 5389683, at *1 (N.D. Tex. Nov. 2, 2012); (quoting *Wedgeworth v. Fibreboard Corporation*, 706 F.2d 541, 545 (5th Cir.1983)); *see also In re Ramu Corporation*, 903 F.2d 312, 318 (5th Cir. 1990) (noting that a district court ordinarily has "wide discretion" to grant "[t]he stay of a pending matter").  The *Colorado River* line of cases do not apply because (a) this case involves a request to stay where there are two parallel federal court cases; and (b) one of the two cases merely asserts a declaratory judgment claim.  In this context, the Supreme

---

[6] By requesting transfer of this case to the Eastern District of Louisiana under the grounds that the first-filed rule should not apply and the Louisiana Case should be given priority, Defendants do not waive their right to, within a reasonable time, move to transfer this case for convenience of the parties, the interests of justice, and other applicable grounds pursuant to 28 U.S.C. § 1404.  Defendants expressly reserve their right to assert as a defense and to move, when appropriate, for transfer of this Action under 28 U.S.C. § 1404 as permitted by the Fed. R. Civ. P.

22

Court has expressed that the "[d]istinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995).

Courts applying *Landis* apply a six-factor test.  These factors include, (1) the extent to which the issues in the first case overlap with those presented in the current case; (2) the status of the first case; (3) the private interests of the plaintiffs (in the case sought to be stayed) in proceeding expeditiously, weighed against the prejudice to the plaintiffs caused by the delay; (4) the private interests of and burden on the defendants (in the case sought to be stayed); (5) the interests of the courts; and (6) the public interest.  *SuperMedia Inc. v. Bell*, 3:12-CV-2034-GFISH, 2012 WL 5389683, at *1 (N.D. Tex. Nov. 2, 2012).[7]  Courts applying *Landis* also consider "the competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *E.g., CMAX, Inc. v. Hall*, 300 F.2d 265, 268

---

[7] Other courts apply a three-factor task, weighing: (1) the judicial and party resources that would be saved by avoiding duplicative litigation; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the potential hardship and inequity to the party opposing the stay.  *Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 821 (D. Minn. 2016); *Rizk v. DePuy Orthopaedics, Inc*., CIV.A. 11-2272, 2011 WL 4965498, at *2 (E.D. La. Oct. 19, 2011).  CCPS has not found a case in which this Court has definitively decided which factors to apply, and, in fact, it may be that different tests should apply for different cases.  *E.g., Fishman Jackson*, 180 F. Supp. 3d 476 at 483 (noting that district courts "sometimes cite the *Landis* case as authority for their discretion to grant or deny a stay without applying any particular test"); *see also Rodriguez v. Grand Prairie Indep. Sch. Dist*., 3:13-CV-1788-D, 2014 WL 4055364, at *1 (N.D. Tex. Aug. 15, 2014).  Defendants are aware of one case in which this Court appears to have applied a three-factor test. *See In re Wal-Mart Stores, Inc. S'holder Derivative Litig*., 4:12-CV-4041, 2012 WL 5935340, at *7 n. 8(W.D. Ark. Nov. 27, 2012), *vacated and remanded sub nom.* by *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013) (appearing to examine (a) judicial economy and inherent power, (b) lack of hardship and ability of the other court to protect non-movant's rights, and (c) savings of time and effort for the court, counsel, and litigants).  In the interests of caution, however, Defendants discuss all six factors in *infra* Part IV.B.

(9th Cir. 1962); *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 482–83 (N.D. Tex. 2016) (citing *Landis*, 299 U.S. at 254–55).

In this case, all six factors weigh in favor of this Court staying this action pending the final outcome of the Louisiana Case, or at minimum until the Court rules on Plaintiff's motion to dismiss, which is presumably being filed today in the Louisiana Case.

a.  *Extent of Overlap Between the Two Cases*.

As discussed in greater detail above, there is extensive overlap between the Louisiana Case and this case.  In the Louisiana Case, CCPS seeks a monetary judgment for unpaid lost and damaged container fees, as well as a declaration of rights and responsibilities and to the applicable fee and what is owed by Plaintiff.  In this case, Plaintiff merely seeks a declaration that the same fees at issue, under the same contractual relationship, are not owed.  The only substantive difference between the two cases is that Plaintiff has wrongfully misjoined several other corporate entities in this case which are subject to dismissal.  While this is a difference in the case caption, there is no real difference as to the dispute at issue in the respective cases. What is more, the law does not require the two cases to be exact mirror images of each other. While the standard is one of 'substantial similarity,' the proceedings need not be identical. *Wal-Mart Stores*, 2012 WL 5935340, at *2.

b.  *The Status of The First Case*.

This factor also weighs heavily in favor of a stay.  This case is in its infancy—recently removed to federal court, and an Answer has yet to be filed.  The Louisiana Case has a nearly identical case posture—the case was filed in April 2020, and an Answer has yet to be filed.  In fact, the instant motion is being filed on the same day that an Answer or other responsive motion is due in the Louisiana Case.  Neither case has progressed more rapidly than the other, the

24

deadline to amend pleadings and add parties has not lapsed in either case, and consolidation and transfer of this case with the Louisiana Case is ideal at this stage of the proceedings. There would be no prejudice to stay this case pending the outcome of the Louisiana Case, where the parties are litigating the same dispute.

     c. *The Private Interests of the Parties, Weighed Against Proceeding Expeditiously.*

   Factors three and four also weigh in favor of staying the instant matter. Initially, it is worth noting that there is little prejudice or harm to Plaintiff's interests to stay this case. CCPS is not seeking to stay the entire dispute between the parties, but rather simply to stay this case so the exact same dispute can be litigated in the Louisiana Case, rather than on two fronts simultaneously. The crux of this dispute can still proceed expeditiously when this case is stayed, resulting in no prejudice to either party.

   Plaintiff's corporate offices are in Louisiana,[8] and Plaintiff consented to suit in Louisiana in the original contract between the parties, see Ex A at ¶ 23. Plaintiff has likewise already retained counsel in Louisiana and appears well-prepared to litigate this dispute there. Again, it bears mention that Plaintiff's Amended Complaint here alleges a sole declaratory judgment claim, whereas the Louisiana Case seeks to litigate the entirety of the dispute between the parties, including CCPS's claims for monetary damages.

   The benefit to Defendants of a stay far outweighs any alleged prejudice to Plaintiff. CCPS had a clear expectation that this lawsuit would be brought in either Louisiana or Michigan under the parties' contract. CCPS will incur unnecessary legal expenses and duplication of effort if this lawsuit were to proceed in Arkansas, while the parties fight the same battle in Louisiana. The stay should be granted to avoid such an unnecessary waste of resources.

---

[8] Pepper Source website, *available at* http://www.peppersource.com/contact.aspx (last visited June 14, 2020).

      d.     *The Interest of the Courts.*

The interest of the United States Courts also weighs in favor of granting a stay. The federal court system has limited resources and both efficiency and judicial economy would be served by staying this action pending the outcome of the mirror image of this dispute in the Louisiana Case. The simultaneous litigation of two cases in which the parties dispute the same issues would cause an undue burden on this Court, and lead to the possibility of inconsistent outcomes. Justice would best be served by litigating this dispute where the majority of the claims have been filed, in the Louisiana Case, which involves both claims for monetary damages and declaratory relief. Finally, there is no harm to this Court by merely staying this case pending the outcome of the same dispute in Louisiana.

      e.     *The Public Interest.*

The public interest counsels in favor of a stay, because it does not serve the public to litigate the same dispute in two different forums simultaneously. Plaintiff, which has its corporate offices in Louisiana and agreed to jurisdiction in Louisiana in the original contract between the parties, clearly has an expectation of litigating this dispute there. To the contrary, most of the Defendants did not sign a contract or perform any services for Plaintiff and had no reasonable expectation of litigating this dispute in Arkansas. Again, Defendants do not request a stay to halt this dispute, but simply to allow the Louisiana Case to proceed to avoid simultaneous litigation on substantially similar issues. Furthermore, it would serve the public interest for the case involving both monetary and equitable claims to be litigated first.

      f.     *Timing of the Stay.*

For the reasons articulated above, and due to the fact that all six factors weigh heavily in favor of a stay, it would be entirely appropriate for the Court to stay this case until a judgment is

reached in the Louisiana Case.  Such a stay would serve the interests of judicial economy and save resources for all parties, considering that the cases are truly parallel to one another and seek to litigate the same issues.  At minimum, should the Court deem the requested stay to be immoderate, CCPS asks the Court to stay this action until the Louisiana Court rules on a motion to dismiss which is purportedly being filed today by Pepper Source in the Louisiana Case.  Such stay would presumably only last a few months, and would allow this Court to learn the Louisiana Court's intentions with respect to the declaratory judgment count in that matter.

## V.  __CONCLUSION__

Wherefore, Defendants respectfully request that this Court enter an Order (1) dismissing the Amended Complaint, (2) transferring this action to the United States District Court for the Eastern District of Louisiana or, (3) in the alternative, staying this action pending resolution of the Louisiana Case.  CCPS also asks for any other further relief in its favor which the Court deems just and proper.

DATED:        June 15, 2020

Respectfully Submitted,

Max Deitchler, Arkansas Bar No. 2012200
E-Mail:          max.deitchler@kutakrock.com
Andrew Tarvin, Arkansas Bar No. 2015191
E-Mail:          andrew.tarvin@kutakrock.com
**KUTAK ROCK LLP**
234 E. Millsap Road, Suite 200
Fayetteville, Arkansas 72703
Telephone: (479) 973-4200
Facsimile: (479) 973-0007

and

Michael S. Vitale, Esq., Fla. Bar No. 17136
E-mail:          mvitale@bakerlaw.com
                 pkenaley@bakerlaw.com
                 orlbakerdocket@bakerlaw.com

Yameel L. Mercado Robles, Esq., Fla. Bar No.
1003897
E-Mail:        ymercadorobles@bakerlaw.com
               emachin@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168