**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

PEPPER SOURCE, LTD.                                                    PLAINTIFF

v.                                      Case No. 2:20-cv-2079

CHEP, a Brambles Company; BRAMBLES
NORTH AMERICA, INC.; BRAMBLES
USA, INC.; CHEP SERVICES, LLC;
CHEP CONTAINER AND POOLING
SOLUTIONS, INC.; and BRAMBLES
AMERICAS, INC.                                                         DEFENDANTS

<u>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**</u>

COMES NOW the Plaintiff, Pepper Source, Ltd. ("Pepper Source"), by and through its

undersigned counsel, and for its Response to Defendants' Motion to Dismiss (Doc. 18) states and

alleges as follows.

**BACKGROUND**

More than fifteen years ago, Pepper Source entered into a business relationship with

Container and Pallet Services, Inc. ("CAPS"), the predecessor in interest to CHEP Containers

and Pooling Solutions, Inc. ("CHEP"), for the use of various shipping containers at Pepper

Source's facilities, which were filled with product and then shipped to Pepper Source's

customers.  *See* Doc. 3, ¶ 3.  This relationship was reduced to a contractual agreement between

Pepper Source and CAPS that terminated in approximately 2010.  *See* Doc. 3, ¶ 4.  Nevertheless,

Pepper Source and CAPS continued a modified business relationship based upon an extensive

course of dealing in the absence of a written agreement.  *See* Doc. 3, ¶ 4.

At some future time[1], the role of CAPS in the business relationship was subsumed by

CHEP, which was subsequently acquired by Brambles Industries Europe, Inc. ("Brambles").[2]

---

[1] Defendants attach approximately 120 pages of exhibits to the Brief in Support of their Motion to Dismiss

1

*See* Doc. 3, ¶ 6.  Before being acquired by Brambles, Pepper Source and CAPS/CHEP modified their relationship by a course of dealing whereby Pepper Source was not ever charged a per diem rate for the use of CAPS/CHEP's shipping containers despite prior, expired contractual language from before 2010 permitting such a charge.  *See* Doc. 3, ¶ 7.  In addition, the course of dealing between the parties had been long ago modified such that Pepper Source was never audited by CAPS/CHEP even though expired contractual language required such an audit annually.  *See* Doc. 3, ¶ 7.

The final written agreement between Pepper Source and CHEP expired in February 2019. *See* Doc. 3, ¶ 5.  Brambles <u>then</u> sought for the first time to enforce a per diem charge against Pepper Source under the now expired final written agreement between Pepper Source and CHEP. *See* Doc. 3, ¶ 8.  The parties thereafter engaged in lengthy and protracted negotiations over the enforceability of the per diem fees and the parties' long-standing course of dealing regarding those fees.  *See* Doc. 19-3 (Declaration of Amelia Otlowski, ¶¶ 6, 11-13).  On February 27, 2020, CHEP sent Pepper Source an exorbitant and unsupported list of the amounts CHEP intended to charge Pepper Source if a resolution was not reached.  *See* Doc. 19-3, ¶ 13.  On March 16, 2020, after more than a year of disputing the charges, the undersigned counsel for Pepper Source notified CHEP that it had filed a lawsuit against it in Crawford County, Arkansas four days prior. *See* Doc. 19-3, ¶ 15.  Five weeks later, Pepper Source served the Amended Complaint on CHEP

---

that are largely irrelevant for a Motion to Dismiss, including the following purported contracts: an undated Rental Agreement between Pepper Source and CAPS from sometime in 2008 that lists a 12-month term, three different versions of a "Rate Schedule No. 1" between Pepper Source and Caps, the last of which is dated November 9, 2009, and "Rate Schedule #3" between Pepper Source and CHEP dated February 13, 2017, which does not reference or incorporate any other agreement and sets forth a "contract length" of two years.

[2] In its Corporate Disclosure Statement filed as part of the subsequent but parallel litigation in the Eastern District of Louisiana, CHEP identifies Brambles Industries Europe, Inc. as its owner and the ultimate parent company as Brambles Limited.  *See* Exhibit A.  Pepper Source has no reason to doubt the truth of this statement despite its prior allegation in the Amended Complaint.

on April 16, 2020.[3]  *See* Doc. 19-3, ¶ 16.  The very next day, in a blatant attempt to forum shop, CHEP filed an 18-page Complaint against Pepper Source in the Eastern District of Louisiana seeking declaratory relief over precisely the same issue as in the lawsuit it had just been served. *See* Complaint for Monetary Damages and Declaratory Relief, attached hereto as Exhibit B. CHEP does not dispute in that case that the issue and parties involved substantially overlap.

## ARGUMENT

Defendants wish for this Court to step aside so that CHEP may pursue its subsequently filed claims against Pepper Source in a preferred and more convenient forum for CHEP.  In support, Defendants argue: (1) this Court lacks personal jurisdiction over some Defendants; (2) the Amended Complaint fails to state facts upon which relief can be granted; and (3) the dispute should instead be heard in their subsequently filed case in the Eastern District of Louisiana. Each argument fails such that the present Court should hear this first-filed lawsuit.

### A.  Personal Jurisdiction Exists Over CHEP.

Defendants first argue that the Court lacks personal jurisdiction over Defendants CHEP, a Brambles Company, Brambles North America, Inc., Brambles USA, Inc., CHEP Services, LLC, and Brambles Americas, Inc.  Defendants do not dispute that this Court has personal jurisdiction over CHEP Container and Pooling Solutions, Inc. ("CHEP").  Pepper Source does not oppose a dismissal without prejudice of each of the Defendants other than CHEP.

Personal jurisdiction certainly exists over CHEP.  Arkansas' long-arm statute authorizes the exercise of personal jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment.  *See* Ark. Code Ann. § 16-4-101(B); *see also Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

---

[3] The Defendants accuse Pepper Source of engaging in a "race to the courthouse", but Pepper Source is unaware of any "race" that involves a year of negotiations before the start line and five weeks of separation at the finish line.

General jurisdiction exists over CHEP.   Under the theory of general jurisdiction, the Court may hear this case if CHEP has "continuous and systematic" contacts with Arkansas as to render it "essentially at home" in Arkansas.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  As alleged in the Amended Complaint, Pepper Source is an Arkansas corporation with its principal place of business in Van Buren, Arkansas.  *See* Doc. 3, ¶ 1.  For approximately fifteen years, CHEP delivered containers to Pepper Source in the Western District in Arkansas pursuant to its business relationship with Pepper Source.  *See* Doc. 3, ¶ 3. These containers, which are owned by CHEP and make up the subject of this litigation, were constantly in use in the State of Arkansas such that CHEP's contacts with this jurisdiction were continuous and systematic over all relevant time periods.   CHEP does not dispute general jurisdiction exists herein.

Specific jurisdiction also exists as the alleged injury giving rise to the lawsuit occurred within the Western District of Arkansas.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).  The dispositive issue in this litigation—whether Pepper Source owes a per diem to CHEP—involves containers that were located and used in the Western District of Arkansas over an approximately fifteen year period.  CHEP does not dispute specific jurisdiction exists herein.

CHEP is the real party in interest as to the outcome of this dispute.  Therefore, Pepper Source agrees to a voluntary dismissal of all other Defendants and submits that this matter should proceed solely against CHEP, over whom this Court undoubtedly has personal jurisdiction for the reasons set forth above.

**B.  The Amended Complaint Clearly States a Claim for Declaratory Relief Against CHEP.**

Next, CHEP argues that the Amended Complaint fails to state facts showing that Pepper Source is entitled to declaratory relief.[4]  CHEP also accuses Pepper Source of failing to satisfy the pleading requirements of Rule 8.  However, Rule 8 simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

When deciding the merits of a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations and draw all reasonable inferences in the non-movant's favor. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008); *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th Cir. 2004).  A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979); *see also Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) ("[A] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.").

---

[4] As an initial matter, none of the 120 pages of exhibits attached to Defendants' Motion to Dismiss are relevant to the question of whether the Amended Complaint states a plausible claim for relief. *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

The purpose of Rule 8's requirement of a short and plain statement of the claim is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Here, CHEP cannot reasonably argue that the Amended Complaint did not provide it with fair notice of the claim for declaratory relief made by Pepper Source.  In fact, five weeks after being notified of the filing of this lawsuit and just one day after being served with it, CHEP filed an 18-page Complaint against Pepper Source in the Eastern District of Louisiana on the same underlying facts and issues present in the immediate action.  In their Brief in Support of their Motion to Dismiss the Amended Complaint herein, CHEP included 120 pages of exhibits it contends are related to the issue disputed by the Amended Complaint.  Contrary to their arguments otherwise, CHEP's course of conduct in this lawsuit and in the Eastern District of Louisiana reveals that the Amended Complaint gave CHEP more than fair notice as to Pepper Source's claim and the grounds upon which that claim rests.

Pepper Source's Amended Complaint seeks a declaration that "[p]er diem charges had been waived by the ongoing agreement of the parties in course of dealing.  Further, any contractual provision pertaining to per diem charges had expired."  *See* Doc. 3, ¶ 9.  The Arkansas Declaratory Judgment Act grants courts within Arkansas with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  Ark. Code Ann. § 16-111-101.  An action for declaratory judgment is a request by an interested party for the court to determine the parties' rights and responsibilities.  Ark. Code Ann. § 16-111-102.

CHEP attempts to argue that the Amended Complaint is deficient because it does not specifically identify the entire "course of dealing" history of the parties that Pepper Source claims led to CHEP's waiver of its right to enforce the expired contractual provisions allowing a

per diem charge.  Yet, the law does not require this level of specificity in stating a plausible claim for declaratory relief.  A claim for declaratory relief requires a showing of: (1) a justiciable controversy; (2) between parties with adverse interests; (3) the party seeking declaratory relief must have a legally protectable interest in the controversy; and (4) the issue must be ripe for judicial determination.  *See Warren v. State Farm Fire & Cas. Co.*, 2014 WL 4094177, at *6 (W.D. Ark. Aug. 19, 2014) (citation omitted).

In the context of a declaratory judgment action, an actual controversy exists if, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1974).  The controversy must "be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)) (internal alterations omitted).  The controversy in this matter is clearly described in the Amended Complaint: CHEP[5] recently sought for the first time to charge Pepper Source a substantial and unsupported per diem rate for containers under expired contractual provisions that had additionally been waived by the parties' longstanding course of dealing.  *See* Doc. 3, ¶ 9.

As stated in the Amended Complaint, the parties' interests are adverse as CHEP demanded more than $450,000.00 from Pepper Source related to the controversy.  *See* Doc. 3, ¶ 8.  Pepper Source, of course, has a legally protectable interest in the controversy, as it is a party

---

[5] While the Amended Complaint does not precisely delineate which CHEP entity has contributed to the actual controversy in attempting to charge Pepper Source the per diem rates, the real CHEP party in interest under the business relationship was certainly named as a Defendant.  Furthermore, both Rules 21 and 25 of the Federal Rules of Civil Procedure allow parties to be added, dropped, or substituted, as necessary.

to the business relationship and is whom CHEP is attempting to charge the substantial per diem charges in contravention of its course of dealing under an expired agreement.  Finally, the matter is ripe for judicial resolution.

Pepper Source's Amended Complaint clearly and succinctly sets forth the parties' prior business relationship, the actual controversy that developed between them, and the declaration sought pursuant to Ark. Code Ann. § 16-111-102.  The Amended Complaint meets all requirements for pleading for declaratory relief, and certainly provided CHEP with fair notice of the claim and the grounds upon which it rests.  CHEP's Motion to Dismiss under Rule 12(b)(6) should thus be denied.

### C. This First-Filed Action Should Not Be Dismissed or Transferred to the Eastern District of Louisiana.

Finally, CHEP argues that the Amended Complaint should be dismissed, transferred, or stayed so that CHEP can instead litigate this matter in its preferred forum in the Eastern District of Louisiana, where it filed suit five weeks after being notified that the immediate action was instituted.  In reaching that conclusion, CHEP engages in numerous instances of legal acrobatics to avoid the well-recognized "first-to-file" rule.  Just as in *Northwest Airlines, Inc. v. Am. Airlines, Inc.*, the "first-to-file" rule is applicable to the present litigation, and no compelling circumstances exist that would justify varying from application of the rule.  989 F.2d 1002 (8th Cir. 1993).

 "The well-established rule is that in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'" *Anheuser–Busch, Inc. v. Supreme Int'l Corp.,* 167 F.3d 417, 419 (8th Cir.1999) (citations omitted); *see also Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985).  Courts have considered three factors when determining whether to apply the first-to-file rule: (1) chronology of actions; (2)

similarity of the parties; and (3) similarity of the issues. *Alltrade, Inc. v. Uniweld Prods. Inc.,* 946 F.2d 622, 625 (9th Cir.1991).  In this case, all three factors clearly indicate application of the first-to-file rule: (1) Pepper Source filed suit five weeks before CHEP; (2) with a voluntary dismissal of the other Defendants, both cases involve the same two parties (Pepper Source and CHEP); and (3) the issue to be litigated in the same in both cases.  In its Response to the Motion to Dismiss filed by Pepper Source in the Eastern District of Louisiana, CHEP does not even dispute that the issue and parties in both suits "substantially overlap" such that the first-filed rule is applicable.

Admittedly, however, the first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, and "will not be applied where a court finds 'compelling circumstances' supporting its abrogation." *Northwest Airlines*, 989 F.2d at 1005.  "The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." *Id.* (internal citations and quotation marks omitted).

The Eighth Circuit has identified "two 'red flags' signaling potentially compelling circumstances: (i) if the first filer had notice of the second filer's intention to file suit, and therefore raced to the courthouse to be first; and (ii) a suit for declaratory judgment, which may be more indicative of a preemptive strike than a suit for damages or equitable relief."  *Id*. at 1007.  Above all, though, compelling circumstances are generally those that tend to show that the first-filing party either "acted in bad faith [or] raced to the courthouse to preempt a suit by [the other party]." *Id.*  The party that opposes the first-filed rule has  the burden of showing compelling circumstances exist.  *See Lewis & Clark Reg'l Water Sys., Inc. v. Carstensen Contracting, Inc.*, 339 F. Supp. 3d 886, 892-93 (D. S.D. 2018) (citation omitted).

Similarly to this case, in *Northwest Airlines*, the Eighth Circuit upheld a district court's decision to follow the "first-to-file" rule in a declaratory judgment action.  989 F.2d at 1002.  As the Eighth Circuit stated therein, although actions for declaratory judgment "merit[] a closer look", the absence of bad faith and a finding of no "race to the courthouse" should lead the Court to hold that no compelling circumstances exist to abrogate following the "first-to-file" rule.  *Id*. at 1007.

The theory advanced by CHEP herein is essentially that Plaintiff's filing of suit for declaratory relief in Crawford County, Arkansas is proof in and of itself that the action was filed under a direct threat of litigation.  CHEP asserts that the declaratory judgment action on its own presents a compelling circumstance for not applying the "first-to-file" rule.  Yet, this would be a misapplication of the law.  The filing of suit for declaratory relief is merely a "red flag" subject to "a closer look" as to whether the Plaintiff "acted in bad faith [or] raced to the courthouse to preempt a suit by [the other party]."  *Northwest Airlines*, 989 F.2d at 1007.  The filing for declaratory relief is not on its face a sufficient compelling circumstance.  *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994) ("an exercise of a party's right to declaratory relief does not necessarily constitute an anticipatory filing for purposes of an exception to the first filed rule.").  If such were the case, "each time a party sought declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable to [the] defendant could always prevail under the anticipatory filing exception [to the first-filed rule]."  *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1137 (11th Cir. 2005) (quoting in full *800–Flowers, Inc.,* 860 F. Supp. at 132).

Instead, the court should base its finding on whether compelling circumstances exist by determining whether Plaintiff "acted in bad faith [or] raced to the courthouse to preempt a suit by

[the other party]." *Northwest Airlines*, 989 F.2d at 1007. "Declaratory judgments present compelling circumstances only if they are 'more indicative of a preemptive strike than a suit for damages or equitable relief.'" *Maytag Corp. v. Int'l Union, United Auto., Aerospace, & Agric. Implement workers of Am.*, 2009 WL 350649, at *7 (S.D. Iowa Feb. 11, 2009) (quoting *Nw. Airlines,* 989 F.2d at 1007).

Pepper Source submits that compelling circumstances do not exist herein. In *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, the Western District of Missouri court held that no compelling circumstances existed for varying from the first-filed rule where there was "no record of misleading or egregious actions" taken by the first party to file suit and "both lawsuits seek declaratory judgment of the parties' rights and obligations…" 2012 WL 4363723, at *4 (W.D. Mo. Sept. 21, 2012). On this point, it should be noted that CHEP's lawsuit subsequently filed in the Eastern District of Louisiana also seeks declaratory relief, except that CHEP seeks a declaration it is entitled to charge the per diem amount. Because both Pepper Source and CHEP seek declaratory relief in their respective lawsuits, no compelling circumstances should be found on the basis of Pepper Source's petition for declaratory judgment in this first-filed case.

Similarly, in *Maytag Corp.*, the Southern District of Iowa court held that no compelling circumstances existed to justify departure from the first-filed rule where the suit for declaratory relief was not a preemptive strike but was instead filed for a proper purpose. 2009 WL 350649, at *8. When Pepper Source filed its lawsuit herein, there was no imminent threat of litigation from CHEP. To the contrary, the parties had engaged in more than a year of negotiations on the disputed, and CHEP <u>still</u> waited five weeks after being notified of the immediate matter's filing to file its own lawsuit. Even after being notified of this lawsuit's filing, CHEP continued to

engage Pepper Source in settlement discussions, "believ[ing] the parties were close to settlement." *See* Doc. 19-3, ¶ 15. Pepper Source's filing was for a proper purpose and was not a preemptive strike, as confirmed by CHEP's own general manager who continued to believe litigation would be unnecessary even after being notified of this case. *See* Doc. 19-3, ¶ 15.

In this respect, the second "red flag" is much akin to the first but is similarly unpersuasive under the pertinent facts of this proceeding. Contrary to the assertions of CHEP, the facts of this case do not reflect a "race to the courthouse." Again very similarly to this case, in *Northwest Airlines,* the Eighth Circuit concluded that the first-filed declaratory judgment action had not been filed as a "race to the courthouse." 989 F.2d at 1007. While the defendant in that case argued that it put the plaintiff on notice of its intent to later file suit, the facts in *Northwest Airlines* showed that the defendant's general counsel simply relayed he "ha[d] never much fancied being a plaintiff, but you folks may drive us to it" several weeks before the first-filed action was instituted. *Id*. at 1003. The Eighth Circuit found that this communication "gave no indication that a lawsuit was imminent." *Id.* (emphasis added). In addition, after the plaintiff filed for declaratory judgment in *Northwest Airlines*, the defendant waited six weeks before filing its own lawsuit. *Id*. These facts convinced the court that the first-filed action could not have been filed in anticipation of litigation because the second-filed action "was not truly contemplated until after [the plaintiff] had filed its action." *Id.* (emphasis added).

CHEP's general manager asserts that she subjectively "believed" the parties were close to a resolution when CHEP was notified of the immediate case's filing. *See* Doc. 19-3, ¶ 15. As in Northwest Airlines, that certainly does not "indicat[e] that a lawsuit was imminent" by CHEP. 989 F.2d at 1007. Instead, CHEP's actual course of action in not filing suit until more than five weeks after originally being notified that Pepper Source had filed suit in Arkansas is incredibly

similar to the scenario in *Northwest Airlines* where the Eighth Circuit found that the second party to file's lawsuit "was not truly contemplated until after [the plaintiff] had filed its action." *Id.* at 1003. That should be considered in conjunction with the parties' engaging in deliberations over the dispute for a year before Pepper Source filed suit. As a result, the facts of this proceeding do not support compelling circumstances for varying from the well-recognized first-to-file rule.[6]

Nevertheless, if for any reason the Court determines that the first-to-file rule should not apply, Pepper Source contends that venue remains appropriate in the Western District of Arkansas as it is the district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). CHEP has repeatedly accused Pepper Source of forum shopping without producing an iota of evidence in support of the allegation. To the contrary, the fact that the containers at issue were all sent to Pepper Source's facilities in the Western District of Arkansas strongly supports that this is the most convenient and appropriate venue to hear this matter.

### D. The Forum-Selection Clause in the 2008 Contract Attached as an Exhibit to CHEP'S Brief in Support of Its Motion to Dismiss is Permissive, Ambiguous, and Inapplicable.

Exhibit A to CHEP's Brief in Support of its Motion to Dismiss is an undated Rental Agreement between Pepper Source and CAPS from sometime in 2008. *See* Doc. 19-1, § 23. For whatever reason, CHEP fails to make mention of the forum-selection clause in its Motion to Dismiss or Brief in Support in this immediate case, but CHEP makes numerous references to it in its Response to Pepper Source's Motion to Dismiss the second-filed case in the Eastern District of Louisiana. The unenforceability of the clause deserves some discussion herein.

The confusing and ambiguous forum-selection provision states in full:

---

[6] Even under a balancing of the convenience exception to the first-filed rule, the convenience of the parties, witnesses, and the interests of justice all support this Court hearing the matter. See 28 U.S.C. § 1404(a).

> Either party initiating any litigation action against the other party agrees that this Agreement shall be construed and enforced in accordance with state law of the party against whom the action was initiated.   Each party initiating action irrevocably agrees to initiate any action or proceeding to enforce any matter arising from or related to this Agreement in the state and jurisdiction of the charged party, and agrees not to institute any such legal action or proceeding in any other court.   For purposes of this Agreement, PEPPER SOURCE submits to the jurisdiction of the state courts located in Michigan, or the federal coursts of the Eastern District of Michigan, Southern Division in the event PEPPER SOURCE initiates the action.   In the event that CAPS initiates the action [sic] submits to the jurisdiction of the state courts located in New Orleans, or the federal courts of the Western District, Southern Division of New Orleans.

*See* Doc. 19-1, § 23.   First, it is important to note that this forum-selection clause is permissive, not mandatory, such that Pepper Source is not precluded from pursuing its claims in the Western District of Arkansas.  *See Bright Harvest Sweet Potato Co. v. H.J. Heinz Co., L.P.*, 2013 WL 2458685, at *3 (W.D. Ark. June 6, 2013) (citing *Dunne v. Libbra,* 330 F.3d 1062, 1064 (8th Cir .2003) (explaining that mandatory forum selection clauses employ terms such as "exclusive," "shall," and "only")); *see also R & R Packaging, Inc. v. J.C. Penney Corp.*, 2013 WL 773455, at *5 (W.D. Ark. Feb. 28, 2013).   "[W]here the clause is ambiguous as to whether or not it is mandatory, it should be construed against the drafter."  *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F. Supp. 1334, 1370 (N.D. Iowa 1996), *aff'd,* 119 F.3d 688 (8th Cir. 1997).

Just as in *Dunne*, the forum selection clause here is permissive.  *Dunne*, 330 F.3d at 1064. The provision simply states that a party "submits to the jurisdiction" of a certain court. "Permissive forum-selection clauses … constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum."  *Liberty Mut. Ins. Co. v. Milender White Constr*., 2017 WL 3736630, at *6 (D. S.D. Aug. 29, 2017) (quoting *Jet Co., Inc. v. Thor Indus., Inc*., 2016 WL 1642663, at *3 (N.D. Iowa Apr. 25, 2016)).   In evaluating the language of the forum selection clause, the Court should reach the same conclusion as it has on multiple occasions before: "the forum selection clause in

this case is not exclusive or mandatory, and [Pepper Source] is free to bring their action in this Court." *See R & R Packaging,* 2013 WL 773455, at *5. As a result, Pepper Source is not limited from bringing its action in the Western District of Arkansas, where a substantial part of the events giving rise to its claim occurred.

Secondly, the forum-selection provision is ambiguous and should be construed against the Defendants. Ambiguous terms in a forum selection clause are to be construed against the drafter. *See Taylor v. Hinkle*, 200 S.W.3d 387, 395 (Ark. 2004) (acknowledging Arkansas's application of the doctrine of *contra proferentem*, under which ambiguities are construed against the drafter of a contract). For starters, it states that the "Agreement shall be construed and enforced in accordance with state law of the party against whom the action was initiated" but does not identify what state's laws will apply, nor whether it will be the state of incorporation for the other party, the state where the other party's conduct and business are at issue, or simply the state of the other party's choosing. In addition to being permissive, the provision regarding CAPS' initiation of an action does not even identify who submits to the jurisdiction of state court located in New Orleans or "the federal courts of the Western District, Southern Division of New Orleans." Certainly, the provision does not state that Pepper Source submits to that jurisdiction and Pepper Source accordingly cannot be exclusively bound to the personal jurisdiction of those courts based solely on this provision. Finally, the forum-selection provision is ambiguous in that "the federal courts of the Western District, Southern Division of New Orleans" do not even exist.

Regardless of the permissiveness and ambiguity of the forum-selection provision, it is unenforceable as the 2008 Rental Agreement that includes it is clearly not incorporated by the Rate Schedule #3 that CHEP alleges Pepper Source has breached. *See* Doc. 19-2. "Arkansas law allows for agreements to be construed together as a single agreement '[w]hen a contract

refers to another *writing* and makes the terms of that writing a part of the contract.'" *City of Texarkana, Ark. v. City of Texarkana, Tex.*, 2012 WL 2681802, at *11 (W.D. Ark. July 6, 2012) (quoting *Ingersoll–Rand Co. v. El Dorado Chemical Co.,* 283 S.W.3d 191, 196 (Ark.2008)). "In order to incorporate a separate document by reference into a contract, the <u>reference must be clear and unequivocal,</u> and the terms of the incorporated document must be known or easily available to the contracting parties." *Ingersoll–Rand,* 283 S.W.3d at 196 (emphasis added). Pepper Source first disputes CHEP's contention that this is a breach of contract matter as the Rate Schedule #3 CHEP relies upon expired in February 2019, and the Court will note that <u>all</u> of the invoices attached to CHEP's Brief in Support are dated after the Rate Schedule #3 expired. *See* Doc. 19-5. Additionally, Rate Schedule #3 states that it "is an addendum to the Pay Per Use Trip Rental Agreement dated _____, 20___." Because the form does not actually reference or incorporate any other contract between the parties, the 2008 Rental Agreement is not clearly and unequivocally incorporated by reference such that its forum-selection provision is unenforceable.

Rate Schedule #3 is a stand-alone agreement between Pepper Source and CHEP that expired in February 2019, before CHEP sought to charge Pepper Source any per diem charges and following approximately 15 years of a business relationship in which CHEP waived its rights to charge per diem rates by never charging them and affirmatively acknowledging as much to Pepper Source, as will be shown in more detail as this case progresses.

## CONCLUSION

Pepper Source filed this lawsuit after its longstanding business relationship with CHEP soured in early 2019. The subject matter of the Amended Complaint was clearly stated as seeking declaratory relief as to whether CHEP could charge per diem rates against Pepper Source

based on nothing more than language of an expired contract and after waiving its right to do so during the contract's term by the parties' course of dealing for over a decade.  All containers that were the basis of the attempted per diem charges were sent by CHEP to Pepper Source and Pepper Source's facilities in the Western District of Arkansas.  CHEP does not dispute that this Court has jurisdiction over it, nor could it reasonably do so.  This Court has jurisdiction over Pepper Source and CHEP, and is the venue where a substantial part of the events giving rise to the dispute occurred.  CHEP had more than fair notice of the claim made against it by the Amended Complaint, which additionally complied with the requirements of Rule 8.  The Court should deny CHEP's Motion to Dismiss and retain jurisdiction over this first-filed case in lieu of CHEP's preferred case filed five weeks after it was notified of this matter.  For these reasons, Pepper Source submits that the Court should deny CHEP's Motion.

      RESPECTFULLY SUBMITTED.

            PEPPER SOURCE, LTD., Plaintiff

            By: /s/ Rex W. Chronister
            Attorney at Law
            Arkansas Bar No. 79032
            Chronister, Fields & Flake, PLLC
            P.O. Box 66
            Fort Smith, AR 72902
            Phone: (479)-783-4060
            Email:rexchronister@yahoo.com

            *Attorney for Plaintiff*