UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| PEPPER SOURCE, LTD.<br><br>Plaintiff,<br><br>v.<br><br>CHEP, a Brambles Company; BRAMBLES NORTH AMERICA, INC.; BRAMBLES USA, INC.; CHEP SERVICES, LLC; CHEP CONTAINER AND POOLING SOLUTIONS, INC.; and BRAMBLES AMERICAS, INC.<br><br>Defendants. | Case No.:  2:20-cv-2079 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION, FAILURE TO STATE A CAUSE OF ACTION, TO TRANSFER TO THE EASTERN DISTRICT OF LOUISIANA, OR IN THE ALTERNATIVE, TO STAY**

Defendants, CHEP Container and Pooling Solutions, Inc. ("CCPS"), CHEP, a Brambles Company, Brambles North America, Inc., Brambles USA, Inc., CHEP Services, LLC, and Brambles Americas, Inc. (collectively, "Defendants"), hereby file their Reply in Support of the Motion to Dismiss for Lack of Jurisdiction, Failure to State a Cause of Action, to Transfer to the Eastern District of Louisiana, or in the alternative, to Stay (the "Motion") (Docs. 18 & 19) against Plaintiff, Pepper Source, Ltd. ("Pepper Source"), and in support thereof, state as follows:

## I.  INTRODUCTION

Pepper Source's Response to Defendants' Motion to Dismiss ("Response") (Doc. 22) is replete with straw-man arguments that are not at issue in the Motion. The Response fails to show any legitimate basis why Pepper Source's eleven-paragraph conclusory complaint for declaratory relief should not be dismissed, transferred, or stayed. Pepper Source's discussion of the enforceability of a forum selection clause that was not relied upon in the Motion calls for an

1

advisory opinion and should be disregarded. Pepper Source also argues that the Amended Complaint met Article III's justiciability requirement. But whether the Amended Complaint met Article III's justiciability requirement is also not at issue. Finally, while CCPS did not challenge personal jurisdiction over it, Pepper Source still proceeds to argue personal jurisdiction is proper over CCPS—another red herring that should be rejected.[1]

Pepper Source concedes that all Defendants, except CCPS, must be dismissed for lack of personal jurisdiction. Pepper Source's decision to include these Defendants in the Amended Complaint further shows that it was filed for procedural fencing and forum shopping purposes. The Response provides no evidence rebutting CCPS' evidence that the filing of this action is an abuse of the first-filed rule. Pepper Source fails to respond to CCPS' request that the Court decline to hear this declaratory judgment action in the exercise of its discretion. Pepper Source attempts to back-door allegations into the Amended Complaint by relying on CCPS' complaint in the Louisiana Action.[2] But the Amended Complaint must stand on its own four corners. The Response does not change the fact that the Amended Complaint merely contains conclusory allegations. The Court should grant this Motion and dismiss or transfer the case.

## II.     ARGUMENT

### A.     The Response Highlights the Deficiencies in the Amended Complaint.

Pepper Source contends that because it allegedly satisfied Article III's justiciability requirement it also pled a viable claim for declaratory relief. But CCPS did not move to dismiss under Article III justiciability grounds.[3] Instead, CCPS moved to dismiss because the Amended

---

[1] CCPS elected not to challenge this Court's ability to exercise *specific* personal jurisdiction over CCPS. Because CCPS does not challenge that this Court can exercise specific personal jurisdiction over it in this action, personal jurisdiction over CCPS is not at issue. CCPS, however, does not consent to general personal jurisdiction.
[2] Capitalized terms herein have the same meaning as in the Motion.
[3] Pepper Source's reliance on the Arkansas' declaratory judgment statute is misplaced. The federal declaratory judgment statute governs this action. *See, e.g.*, *Porto v. Allstate Prop. & Cas. Ins. Co.*, No. 4:17CV004400 JLH, 2017 WL 4640432, at *5 (E.D. Ark. Oct. 16, 2017).

Complaint is merely a convoluted set of conclusory allegations.

Pepper Source's admission in its Response is fatal: "While the Amended Complaint **does not precisely delineate which CHEP entity has contributed to the actual controversy in attempting to charge Pepper Source the per diem rates**, the real CHEP party in interest under the business relationship was certainly named as a Defendant." (Doc. 22 at 7 n.5 (emphasis added)). In other words, Pepper Source admits that its Amended Complaint fails to sufficiently allege which party is the real party in interest as it commingles them all in multiple allegations. This admission alone warrants that the Motion be granted under Rule 12(b)(6).

Pepper Source's Amended Complaint cannot even be squared with the story it now seeks to tell in the Response. The Amended Complaint alleges that a Brambles entity or the non-existent entity "CHEP, a Brambles Company" demanded the fees at issue and that "CAPS and CHEP" were acquired by "Bramble[s] which began doing business as 'CHEP, a Brambles Company.'" (Doc. 3 at ¶ ¶ 6, 8). (Doc. 22 at 3). In the Response, Pepper Source on one hand alleges that "Brambles" is the entity seeking to enforce the fees at issue, Doc. 22 at 2, and, on the other hand, also alleges that "CHEP" is the party seeking to recover on the fees, Doc. 22 at 7. It matters not what Pepper Source alleges in the Response, but instead what is actually alleged in the Amended Complaint—a hodgepodge of conclusory allegations lumping all Defendants together, making it impossible to ascertain what allegations are made against which Defendants.

Simply put, the Amended Complaint lacks any factual allegations that taken as true entitle Pepper Source to the relief sought. Pepper Source contends that it does not have to allege factual allegations supporting what purported course of dealing is the premise for its declaratory relief request. This flies in the face of basic pleading standards. Pepper Source cannot allege a claim for declaratory relief by alleging conclusively that an unspecified course of dealing entitles

it to a declaration of rights under an unspecified, unidentified contract. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions….").

Pepper Source suggests that because CCPS filed a well-pled complaint in the Louisiana Action, then that means Pepper Source's complaint in this action is well-pled. (Doc. 22 at 6). CCPS' complaint against Pepper Source in the Louisiana Action is irrelevant with respect to whether Pepper Source properly pled a claim against CCPS in this action. Nor may Pepper Source rely on the exhibits attached to *CCPS's Motion* to now claim that its Amended Complaint provides enough notice under Rule 8 of the Federal Rules of Civil Procedure. The Amended Complaint, which must stand on its own four-corners, cannot do so as it lacks any factual allegations entitling Pepper Source to the declaratory relief sought.

### B. Pepper Source Does Not Address this Court's Discretion in Entertaining Declaratory Judgment Actions.

Pepper Source failed to address CCPS' argument that this Court should exercise its discretion to hear declaratory judgment actions in favor of dismissal. (Doc. 19 at 16-18 (Part IV.C)). While Pepper Source attempts to argue that the record purportedly does not establish compelling circumstances to avoid application of the first-filed rule—which it does, Pepper Source fails to address that this Court may still dismiss Pepper Source's declaratory relief claim in the exercise of its discretion to decide whether to entertain such claim. *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995) ("In exercising their discretion whether to entertain declaratory actions, courts have on occasion stated that declaratory actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit.").

Pepper Source makes no argument as to why this Court should exercise its discretion in favor of hearing Pepper Source's single claim for declaratory relief raising solely defenses to CCPS' claims. The Louisiana Action will more fully resolve the entire dispute as it includes CCPS' claims for damages. Even if this Court finds that the first-filed rule applies here, this Court should exercise its discretion to hear declaratory judgment actions in favor of dismissal.

### C.     Pepper Source Fails to Rebut the Red Flags Raised by its Preemptive Filing.

Pepper Source does not appear to challenge that its Amended Complaint raises both red flags identified by the Eighth Circuit for when compelling circumstances exist to refuse application of the first-filed rule. Instead, Pepper Source contends that a "closer look" reveals it did not act in bad-faith or in a race to the courthouse. Pepper Source, however, fails to submit any evidence to refute CCPS' evidence that Pepper Source lulled CCPS into inaction only to file suit in the middle of settlement negotiations. (Doc. 19-3 at ¶¶ 10-16). But, wanting to have its cake and eat it too, Pepper Source withheld service and invited CCPS to settlement negotiations. (*Id.* at ¶ 15). The question begs, then, what was the purpose of Pepper Source filing an eleven-paragraph conclusory complaint *against six defendants* for declaratory relief if not to force strip true-Defendant CCPS of its right to pursue its claims in the forum of its choice? *See Eveready Battery Co., Inc. v. Zinc Prods. Co., Div. of Alltrista Corp.* 21 F. Supp. 2d 1060, 1062 (E.D. Mo. 1998) (refusing to apply first-filed rule because, in part, "there is no evidence that Eveready needed an immediate resolution of the matter such that litigation was necessary").

Pepper Source does not answer that question. Like the plaintiff in *Eveready*, Pepper Source has not presented any indication that it needed immediate relief from CCPS' claims such that it had to preemptively file suit in the middle of settlement negotiations. The facts in the record only point to one conclusion: The filing this action was designed to strip CCPS of its right

to pursue its claims in the forum of its choice (the parties' agreed to forum in Louisiana).

Pepper Source contends that there was no immediate threat of suit against it by CCPS. (Doc. 22 at 11-12). False. CCPS submitted an affidavit from its General Manager, Amelia Otlowski, wherein Ms. Otlowski explained that CCPS warned Pepper Source it would pursue collection of the fees if a resolution was not reached. (Doc. 19-3 at ¶¶ 9, 12). Pepper Source then selectively quotes Ms. Otlowski's testimony to argue that she merely subjectively believed the parties were close to a resolution and this is somehow evidence there was no imminent threat of suit. (Doc. 22 at 12). Pepper Source omits Ms. Otlowski's testimony that it was Pepper Source who led CCPS to believe that a resolution was close. (Doc. 19-3 at ¶ 17).

Lastly, Pepper Source chides CCPS for not filing the Louisiana Action until "five weeks" after Pepper Source filed this action. (Doc. 22 at 11). But it was during those same five weeks that Pepper Source withheld service and *invited* CCPS to negotiate a resolution out of court. (Doc. 19-3 at 15). Pepper Source does not deny this. Pepper Source, thus, continued to lull CCPS into inaction by inviting further settlement negotiations just to buy time to later assert that CCPS purportedly had no intent to sue. Pepper Source is asking this Court to penalize CCPS for continuing settlement negotiations in good faith. This is an abuse of the first-filed rule. *See Eveready Battery Co.*, 21 F. Supp. 2d at 1062 ("As a matter of public policy, potential plaintiffs should be encouraged to settle their claims out of court without fear that they will lose the opportunity to pick their forum should negotiations fail. The Court should encourage good faith settlement negotiations rather than rushing to the courthouse, and 'application of the first-filed rule should not penalize parties for their efforts to settle matters out of court.'").

### D.  The Forum Selection Clause is Irrelevant to Resolution of the Motion.

Nowhere in the Motion did CCPS rely on or argue the merits of the forum selection

clause in the 2008 Contract (the "FSC").  Despite this, Pepper Source claims that "[t]he unenforceability of the [FSC] deserves some discussion herein."  (Doc. 22 at 13).  But the enforceability of the FSC is not at issue in the Motion.  This Court should reject Pepper Source's invitation for this Court to rule on this issue, as it would amount to a mere advisory opinion.[4]

Nevertheless, to the extent this Court deems it necessary to address the enforceability of the FSC in ruling on the Motion, CCPS will briefly address Pepper Source's contentions.  At the outset, CCPS did not raise the FSC in the Motion because it has no bearing on the arguments raised therein.  Under the FSC, Pepper Source agreed to initiate any action against CCPS only in the state courts of Michigan or the federal courts of the Eastern District of Michigan.  (Doc. 19-1 at § 23).  Notwithstanding the FSC, CCPS has **not** moved to enforce the FSC to transfer this action to Michigan because CCPS initiated its own suit against Pepper Source in Louisiana.

The FSC, however, is sought to be enforced by CCPS in the Louisiana Action in response to Pepper Source's attempt to transfer the Louisiana Action to this Court.  By its clear terms, the FSC provides that for any action initiated by CCPS against Pepper Source, such action would be brought **only** in the state courts or federal court sitting in New Orleans.  Pepper Source's attempt to transfer the Louisiana Action is contrary to the FSC.

The contention that the FSC is not mandatory is without merit.  The FSC states that the parties "agree[] not to institute any such legal action or proceeding in any other court."  (*Id.*).  There is nothing permissive about such language.  The plain language of the FSC controls.  *See York v. Velox Express, Inc.*, Case No. 4:17-cv-00562-KGB, 2018 WL 10396236, at *2 (E.D. Ark. July 17, 2018) ("Where a forum selection clause specifies a venue with mandatory or obligatory language, an action on the contract may be maintained only in that specified venue.").

---

[4] It is telling, and another sign of abuse of the legal process, that while Pepper Source argues the purported unenforceability of the FSC here, Pepper Source did not argue in the Louisiana Action—where the FSC is at issue—that the FSC is permissive, ambiguous, or otherwise unenforceable.

Pepper Source's argument that the FSC is ambiguous also fails. It is black letter law that an ambiguity only exists where contract language is reasonably susceptible to more than one meaning. *See, e.g.*, *Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 257 (5th Cir. 2016) ("A contract is ambiguous when it is uncertain as to the parties' intentions and is susceptible to more than one reasonable meaning …." (applying Louisiana law)); *Myers v. Central United Life Ins. Co.*, No. 4:09CV00725 SWW, 2011 WL 3296204, at *4 (E.D. Ark. Aug. 1, 2001) ("A contract is ambiguous if…it is reasonably susceptible to more than one meaning…."). Pepper Source does not advance any reasonable competing interpretation of the FSC.[5]

The FSC also clearly selects two exclusive forums, one for each of two scenarios: (1) if Pepper Source initiates the litigation, it must bring such action in the state courts of Michigan or the federal district court for the Eastern District of Michigan; and (2) if CCPS initiates the litigation, it must bring such action in the state courts located in New Orleans or the federal courts sitting in New Orleans. The intent is clear: Because Pepper Source executed the contract in Louisiana (and also maintains its headquarters therein), it would require any suit against it to be initiated in Louisiana and because CCPS (through its predecessor) executed the contract in Michigan, it would require any suits against it to be initiated in Michigan. Pepper Source advances no contrary interpretation of the FSC, which is clear and unambiguous.

The argument that the 2008 Contract was not incorporated into the 2017 Rate Schedule is another red herring. The 2017 Rate Schedule incorporates by reference the 2008 Contract by identifying that it is an "addendum" to "the Pay Per Use Trip Rental Agreement dated ____, 20__" (*i.e.*, the 2008 Contract). (Doc. 19-2). The 2017 Rate Schedule was beyond any doubt intended by the parties to be an "addendum" and not an entirely new contract. (*Id.*) That truth

---

[5] The misnomer relating to the federal district court in New Orleans does not render the clause ambiguous. The parties clearly intended to refer to the federal district court sitting in New Orleans—there is no other reasonable interpretation. The parties simply said "Western District" when they meant "Eastern District."

Pepper Source cannot escape as it is in the clear terms of the 2017 Rate Schedule. To what is it an addendum? The 2017 Rate Schedule answers that question: the "Pay Per Use Trip Rental Agreement." (*Id.*). Only one "Pay Per Use Trip Rental Agreement" has been identified in the record: the 2008 Contract. The Parties were clearly referring to the 2008 Contract.

Thus, Pepper Source's contention that the 2017 Rate Schedule expired is likewise irrelevant to enforcement of the FSC. *E.g.*, *Ferguson-Keller Assocs., Inc. v. Plano Molding Co., LLC*, 274 F. Supp. 3d 916, 920 (D. Minn. 2017) ("[T]he purported expiration of the Agreement does not undermine application of the forum-selection clause.").

Lastly, forum selection clauses are prima facie valid and enforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Servewell Plumbing, LLC v. Federal Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) ("Under *Bremen*, forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid."). None of Pepper Source's arguments go towards rebutting the presumption in favor of enforcement of forum selection clauses. *See Servewell Plumbing, LLC*, 439 F.3d at 789-90.[6]

### III.   CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order (1) dismissing the Amended Complaint, (2) transferring this action to the United States District Court for the Eastern District of Louisiana or, (3) in the alternative, staying this action pending resolution of the Louisiana Case. CCPS also asks for any other further relief in its favor which the Court deems just and proper.

DATED:    July 16, 2020

---

[6] In the interest of clarifying the record, Defendants would also like to address Pepper Source's accusation, in its Motion for Extension of Time to Respond, that the Motion is in excess of the "Court's standard order limiting brief to 25 substantive pages in length." Doc. 22 at ¶ 4. There appears to be no such order, as the local rules do not limit briefs to 25 pages, and Pepper Source cited to no specific order when making such accusation. Notably, Pepper Source abandoned such argument in its Response. Defendants did not violate any rules regarding length of briefs.

Respectfully Submitted,

Max Deitchler, Arkansas Bar No. 2012200
E-Mail: max.deitchler@kutakrock.com
Andrew Tarvin, Arkansas Bar No. 2015191
E-Mail: andrew.tarvin@kutakrock.com
**KUTAK ROCK LLP**
234 E. Millsap Road, Suite 200
Fayetteville, Arkansas 72703
Telephone: (479) 973-4200
Facsimile: (479) 973-0007

and

Michael S. Vitale, Esq., Fla. Bar No. 17136
E-mail: mvitale@bakerlaw.com
pkenaley@bakerlaw.com
orlbakerdocket@bakerlaw.com
Yameel L. Mercado Robles, Esq., Fla. Bar No. 1003897
E-Mail: ymercadorobles@bakerlaw.com
emachin@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168