UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PEPPER SOURCE, LTD.                                                                                    PLAINTIFF

v.                                              No. 2:20-cv-2079

CHEP, a Brambles Company, et al.                                                              DEFENDANTS

## OPINION AND ORDER

This case involves a contractual dispute between Plaintiff Pepper Source, LTD ("Pepper Source") and Separate Defendant CHEP Container & Pooling Solutions, Inc. ("CHEP"). On March 12, 2020, Pepper Source filed the instant action in the Circuit Court of Crawford County, Arkansas seeking a declaratory judgment establishing the parties' rights and obligations under the contract. On April 17, 2020, CHEP filed suit in the United States District Court for the Eastern District of Louisiana seeking damages for Pepper Source's alleged breach of contract and seeking declaratory judgment.[1] Presently before the Court are Defendants' motion (Doc. 18) to dismiss and brief (Doc. 19) in support, Pepper Source's response (Doc. 22) in opposition, Defendants' reply (Doc. 26), and Pepper Source's surreply (Doc. 30). For the following reasons, Defendants' motion to dismiss will be granted.

The following facts[2] are relevant to the contractual dispute underlying this action and were

---

[1] There is no question these actions are parallel as both cases involve the same parties litigating substantially the same issues. *Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 968 (8th Cir. 2013).

[2] The Court takes judicial notice of the complaint filed by CHEP in the United States District Court for the Eastern District of Louisiana. *CHEP Container & Pooling Sols., Inc., v. Pepper Source, LTD.*, Case No 2:20-cv-01225-JTM-KWR (E.D. La. filed April 17, 2020). To the extent any facts are disputed in either case, for purposes of this motion the Court considers as true any material facts alleged in Plaintiff's complaint in this case.

1

compiled from the pleadings in this case and the complaint filed in the Louisiana case.[3]  In 2008, the parties entered into a one year contractual arrangement in which CHEP leased equipment, containers, accessories, and liners (collectively "equipment") to Pepper Source.  Pepper Source used this equipment to distribute products to Pepper Source's customers.  According to the contract, Pepper Source paid CHEP a flat fee to use the equipment during a specified rental period.  Upon expiration of the rental period, Pepper Source was to return the equipment to CHEP to allow CHEP to clean the equipment for a new rental.  If Pepper Source failed to return the equipment upon expiration of the rental period, the contract charged a per diem daily penalty fee per unit of past-due equipment.  Additionally, if the equipment was damaged (outside of normal wear and tear), the contract held Pepper Source responsible for the repair or replacement cost.

After the 2008 contract lapsed, the parties did not execute another formal contract like the 2008 contract.  Rather, the parties continued their business arrangement until 2020 without consistently memorializing their course of dealing with a written agreement.  In some instances, the parties executed a "Rate Schedule" outlining the applicable rental rates and conditions.  In others, CHEP simply fulfilled an order at Pepper Source's request and applied the rates in the most recent Rate Schedule.  It appears CHEP retained the right to audit Pepper Source's facilities (a right outlined in the 2008 contract) to monitor and verify the status of its equipment in Pepper Source's custody.  However, CHEP admits that it generally declined to conduct these audits.  Though the parties continued this business relationship for more than a decade, the parties routinely disagreed as to whether CHEP would charge Pepper Source the per diem penalty when equipment was not timely returned.

---

[3] Container and Pallet Services was the original party to the contract with Pepper Source. CHEP is the successor in interest to Container and Pallet Services.

In February 2017, the parties executed a new two-year Rate Schedule ("2017 Rate Schedule"). The 2017 Rate Schedule included the same terms that had previously applied to the parties' business dealings, including the per diem charge if equipment was not returned on time, and the right to conduct an audit. Sometime around late 2018 or early 2019, CHEP notified its customers, including Pepper Source, that it would begin strictly enforcing the per diem penalties for any equipment not timely returned. Pepper Source objected, claiming the per diem penalty should not be enforced. As a result, the parties began negotiating a solution regarding any outstanding per diem fee charges. The parties also attempted to negotiate a new contract but failed to do so before the 2017 Rate Schedule lapsed. Despite the expiration of the 2017 Rate Schedule, and the failure to come to terms on a new written agreement, the parties continued their business relationship (as was their practice in past) through 2019 and into 2020.

CHEP audited Pepper Source's facilities from June 4, 2019, until early 2020. The results of the audit concluded that Pepper Source allegedly owed $69,300 in fees for 132 lost or mislaid storage containers and over $380,000 in outstanding per diem charges for equipment not timely returned. Pepper Source again argued it should not be required to pay a per diem penalty and the parties' disagreement regarding the per diem charges continued. The parties continued in their attempts to settle the dispute regarding all outstanding charges out of court until March 2020.

On March 12, 2020, counsel for Pepper Source sent a letter to CHEP terminating the parties' business relationship. That same day, Pepper Source filed the instant complaint for declaratory judgment in the Circuit Court of Crawford County, Arkansas against Brambles North America, Inc., CHEP Services, LLC, CHEP Container and Pooling Solutions, Inc., Brambles Americas, Inc., and Brambles USA, Inc. Pepper Source generally seeks a finding that it has no liability stemming from the parties' contractual and business relationship. Although Pepper

Source notified CHEP that it had filed a lawsuit against it, counsel chose not to serve the complaint, but rather Pepper Source encouraged further discussions for settlement. Pepper Source eventually served CHEP on April 16, 2020. The next day, CHEP filed a complaint against Pepper Source in the United States District Court for the Eastern District of Louisiana asserting claims for damages stemming from Pepper Source's breach of contract and declaratory judgment. CHEP removed the Arkansas case to this Court May 8, 2020.

On June 15, 2020, Defendants filed the instant motion to dismiss. Defendants argue dismissal is appropriate for three reasons: (1) that the Court lacks personal jurisdiction over Separate Defendants Brambles USA, CHEP Services, Brambles N.A., CHEP, a Brambles Company, and Brambles Americas, Inc.; (2) that the complaint fails to satisfy Rule 8's pleading requirements and therefore fails to state a claim upon which relief can be granted; and (3) that Plaintiff improperly filed this complaint for purposes of forum shopping, which requires either dismissal or transfer to the Eastern District of Louisiana. Pepper Source appears to concede the argument on personal jurisdiction and agrees to dismissal without prejudice against each of those defendants. The Court will grant this request, which leaves pending only Plaintiff's claims against CHEP. The Court need not address whether the complaint states a claim upon which relief can be granted because it will grant the motion to dismiss on the basis that Pepper Source filed its complaint for declaratory relief as a preemptive strike to secure a more favorable forum.

District courts may hear declaratory judgment actions. See 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."). In cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to hear the case. *Nw. Airlines, Inc v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993). This "first to file" or "first-filed" rule is a facet of federal comity

doctrine and is intended to promote efficient use of judicial resources. *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). The first-filed rule is not applied in a "rigid, mechanical or inflexible" fashion, but rather "in a manner best serving the interests of justice." *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990) (quoting *Orthmann*, 765 F.2d at 121). The first-filed rule is not absolute, and "will not be applied where a court finds 'compelling circumstances' to support its abrogation." *Nw. Airlines, Inc.*, 989 F.2d at 1006 (citing *Goodyear*, 920 F.2d at 488). When considering whether to apply the first-filed rule, the Eighth Circuit has identified "red flags" that may signal potentially compelling circumstances that justify departing from first-filed rule. *Id.* at 1007. One red flag is when the first action is for only declaratory relief, rather than a suit for damages or equitable relief. *Id.* at 1007.

In cases where the first action is for only declaratory relief, the Eighth Circuit warns that "a closer look" is necessary because "such an action may be more indicative of a preemptive strike" to forum shop. *Id.* at 1007; *see also Goodyear*, 920 F.2d at 489. "[D]eclaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forums." *Prudential Ins. Co. of Am. v. Does*, 140 F.3d 785, 790 (8th Cir. 1998); *see also BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995) ("[C]ourts have on occasion stated that declaratory actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit."). Rather, the Declaratory Judgment Act "was intended to provide a remedy which would 'minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued." *Koch Eng'g Co., Inc. v. Monsanto Co.*, 621 F.Supp. 1204, 1207-08 (8th Cir. 1985) (quoting 10A C. Wright, A. Miller and M. Kane, *Federal Practice and*

*Procedure* § 2751 at 569 (1983)).  Thus, when a complaint seeks only declaratory relief, the Court should ask whether there is a reason for requesting relief other than obtaining a favorable forum. *Nw. Airlines, Inc.*, 989 F.2d at 1006; *see also Eveready Battery Co. Inc. v. L.P.I. Consumer Prods., Inc.*, 464 F.Supp.2d 887, 890 (E.D. Mo. 2006).

Pepper Source argues the Eighth Circuit's holding in *Northwest Airlines, Inc.*, controls the outcome here and requires denial of CHEP's motion to dismiss.  In *Northwest Airlines, Inc.*, American Airlines alleged Northwest Airlines illegally hired former American Airlines staff.  989 F.2d at 1003.  Northwest Airlines filed an action for declaratory judgment seeking a finding that it had lawfully hired employees in the past and could continue to hire employees from American Airlines and other competitors in the future.  *Id.*  Six weeks later, American Airlines filed suit seeking a permanent injunction and damages for unfair competition and tortuous interference.  *Id.* at 1004.  The Eighth Circuit ultimately applied the first-filed rule, finding an absence of bad faith on the part of Northwest Airlines, because Northwest Airlines had a legitimate reason (other than forum shopping) for seeking declaratory relief.[4]  Despite asserting no claim for actual damages, Northwest Airlines argued its hiring efforts were "chilled" and "stymied" by American Airlines's contention that Northwest Airlines was violating the law.  *Id.* at 1007.  Thus, though the red flag was present, Northwest Airlines did not act in bad faith because declaratory relief was otherwise proper to prevent ongoing harm to Northwest—it was not simply an attempt to forum shop.

---

[4] The Court also noted that compelling circumstances may exist when the first-filing party is on notice that a lawsuit is imminent.  *Nw. Airlines, Inc.*, 989 F.2d at 1007 (finding that though Northwest Airlines was on notice that American Airlines was considering a lawsuit, there was "no indication a lawsuit was imminent").  During the parties' settlement negotiations, CHEP alleges that it told Pepper Source it intended to collect on the outstanding per diem fees. (Doc. 19-3, p. 2, ¶ 12).  Pepper Source certainly had notice CHEP intended to sue if the parties failed to settle out of court.  That Pepper Source filed its lawsuit the same day it terminated the parties' business relationship indicates that Pepper Source raced to the courthouse believing a lawsuit was imminent.

Despite its reliance on *Northwest Airlines, Inc.*, Pepper Source offers no argument that its declaratory judgment was filed for an otherwise appropriate reason—a central component of the Eighth Circuit's finding that Northwest Airlines did not act in bad faith. In the Louisiana complaint, CHEP alleged that the per diem penalties are still accruing. *CHEP Container & Pooling Sols., Inc., v. Pepper Source, LTD.*, Case No 2:20-cv-01225-JTM-KWR, Doc. 1, ¶¶ 27, 30 (E.D. La. filed April 17, 2020). But neither the amended complaint in this case nor Pepper Source's briefing makes mention that damages are continuing to accrue. (*See* Doc. 3, p. 3, ¶ 10) ("This Court should enter an Order declaring that the [Defendants'] claims against the Plaintiff do not exist. That there is no amount owed to Defendants based upon the ongoing relationship between the parties.").

However, the purpose of declaratory relief is to provide a party with a remedy to minimize the unnecessary accrual of damages by providing immediate resolution of an issue. *Koch Eng'g Co.*, 621 F.Supp. at 1207-08; *See Eveready Battery Co., Inc. v. Zinc Prods. Co., Div. of Alltrista Corp.*, 21 F.Supp.2d 1060, 1062 (E.D. Mo. 1998) (determining that first-filing party's desire to determine obligations under contract is not enough to demonstrate litigation and immediate resolution is necessary such that declaratory judgment is otherwise appropriate). In this case, Pepper Source waited five weeks to serve the complaint, at which time the per diem penalties could possibly accrue. Based on Pepper Source's own inaction (and the absence of any affirmative argument addressing this point), there is no reason to believe the complaint for declaratory judgment was filed to minimize damages or to obtain an immediate resolution of the issue to stop the unnecessary accrual of those damages. Rather, the fact Pepper Source waited five weeks to serve the complaint while continuing settlement discussions with CHEP suggests filing in Arkansas was solely a strategic attempt by Pepper Source to secure what it believed was a more

favorable forum.

Courts find compelling circumstances to depart from the first-filed rule in similar cases when a party files suit during settlement negotiations without notifying the other party it has changed its position and decided to litigate the dispute, rather settle. *Eveready Battery Co. v. Zinc*, 21 F.Supp.2d at 1062 ("Evidence of insufficient notice of a change in the first-filing party's position on the dispute *prior to filing* of the first action is indicative of a rush to the court house and thus, compelling circumstances warranting non-application of the 'first-filed' rule." (emphasis added)). Here, Pepper Source filed its complaint while the parties were actively engaged in settlement discussions. There is no evidence Pepper Source informed CHEP that it was considering litigation. Pepper Source only mentioned litigation after it filed the lawsuit. The failure to communicate this change in position prior to filing a lawsuit is a strong indicator that Pepper Source raced to the courthouse in an attempt to choose an advantageous forum. Even after filing the lawsuit, the facts demonstrate that Pepper Source did not truly commit to litigating this matter at the time it filed suit. Pepper Source not only failed to notify CHEP of any change in position, it deliberately withheld service of summons and the complaint and continued to facilitate further settlement negotiations. This evidence indicates that Pepper Source did not intend to litigate at the time it filed suit, but rather filed suit in Arkansas state court to secure a favorable forum.

For these reasons, the Court finds that Pepper Source filed this lawsuit as a preemptive strike in order to obtain a more favorable forum. and will dismiss this action. This result furthers the well-settled policy in this circuit of encouraging natural plaintiffs to proactively settle claims out of court. *Eveready Battery Co. v. L.P.I.*, 464 F.Supp.2d at 891 ("[G]ood faith settlement negotiations should be encouraged, rather than rushing to the courthouse, and application of the

8

first-filed rule should not penalize parties for their efforts to settle matters out of court." (citation omitted)); *Schwendiman Partners, LLC v. Hurt*, 71 F.Supp.2d 983, 988 (D. Ne. 1999) ("[P]otential plaintiffs should be encouraged to settle their claims out of court without fear that they will lost the opportunity to pick their forum should the negotiations fail."). Applying the first-filed rule in this case would penalize CHEP for pursuing a settlement without court intervention.

In light of these compelling circumstances, the interests of justice would not be best served by applying the first-filed rule. Therefore, the Court will exercise its discretion to decline to hear Pepper Source's complaint for declaratory relief. This matter will be dismissed so that the parties may pursue relief in the United States District Court for the Eastern District of Louisiana. Because CHEP seeks actual damages in the Louisiana complaint (and Pepper Source's complaint seeks only declaratory relief), prosecution in Louisiana will allow a more comprehensive determination of this dispute. *See Koch*, 621 F.Supp. at 1208; *see also Solna Web Inc. v. Printed Media Servs., Inc.*, No. 90-0433-CV-W-6, 1990 WL 357918, at *3 (W.D. Mo. Aug. 31, 1990) (determining forum where plaintiff sought damages is more appropriate forum because it affords a comprehensive determination of the rights and remedies of the respective parties); *Id.* at *3 (rejecting argument that defendant's right to assert compulsory counterclaim affords complete relief).

IT IS THEREFORE ORDERED that Defendants' motion (Doc. 18) to dismiss is GRANTED and this case is DISMISSED WITHOUT PREJUDICE. Judgment will be entered separately.

IT IS SO ORDERED this 31st day of July, 2020.

/s/P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE